UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

OLGA ZAMORA, SUSANNA RADER on behalf of themselves and other similarly situated persons,

　　　　Plaintiffs,

vs.

CREDIT SUISSE FIRST BOSTON CORPORATION,

　　　　Defendant.
_____/

CASE NO.

CIV-MOORE

JURY TRIAL DEMANDED

MAGISTRATE JUDGE O'SULLIVAN

## NATIONAL COLLECTIVE ACTION
## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs, OLGA ZAMORA and SUSANNA RADER, former employees of Defendant Credit Suisse First Boston Corporation, f/k/a Donaldson, Lufkin & Jenrette, Inc. (hereinafter "Credit Suisse"), bring this action on behalf of themselves and other similarly situated employees, past and present, of Defendant Credit Suisse to recover unpaid overtime compensation, liquidated damages, attorneys' fees, and costs, under the provisions of Section 16(b) of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 216(b) (hereinafter "the Act").

### I. INTRODUCTION

### NATIONAL COLLECTIVE ACTION BY CREDIT SUISSE
### HOURLY EMPLOYEES FOR UNPAID OVERTIME

1.　　Plaintiffs Olga Zamora and Susanna Rader bring this nationwide collective lawsuit against Defendant Credit Suisse on behalf of themselves and all other past and present employees of Credit Suisse, employed by Credit Suisse at any time within the last three (3) years as securities

sales assistants (sometimes known at Credit Suisse as "SAs"), wire operators, cashiers, or similarly situated clerical, hourly positions.[1]

2.  Credit Suisse, as a matter of practice and policy, refused and/or failed, and upon information and belief, refuses and fails, to pay overtime compensation to employees who were and are not exempt from the Fair Labor Standards Act and work greater than forty (40) hours in a given work week.

3.  Ms. Zamora, Ms. Rader and the similarly situated employees are owed overtime pay, liquidated damages, costs and attorneys' fees under the Fair Labor Standards Act.

4.  Ms. Zamora, Ms. Rader and the similarly situated employees were and are compensated by Credit Suisse on an hourly basis. Ms. Zamora, Ms. Rader and other Credit Suisse sales assistants, marketing associates (telemarketers), cashiers, receptionists, clerks, and wire operators, were told by Credit Suisse that they are not exempt from the Fair Labor Standards Act. Ms. Zamora, Ms. Rader and the similarly situated employees were/are allotted an hourly employee's number of vacation days, sick days and the like, and, but for the lack of payment of overtime compensation, were otherwise treated as hourly employees by Credit Suisse. Although Credit Suisse designated and otherwise treated such employees as non-exempt when it benefitted Credit Suisse, the company nonetheless failed and/or refused to pay such employees overtime.

5.  Specifically, Credit Suisse, despite designating and otherwise treating its SAs and similarly situated clerical hourly employees as non-exempt employees, violated the Fair Labor Standards Act with regard to these employees as follows:

    a.  Such employees work(ed) hours for which they are/were not allowed to record

---

[1]   The title "Sales Assistant" is generally used in the securities industry for the individuals who primarily perform secretarial and clerical duties for securities firms' stockbrokers.

2

and/or submit to Credit Suisse for payment;

      b.    Such employees are/were not paid for all hours worked in a given workweek;

      c.    Such employees are/were not paid overtime compensation at a rate not less than one and one-half (1½) times the rate they are/were employed, for work performed beyond forty (40) hours per week; and

      d.    Credit Suisse has/does not regularly make, keep or preserve records of the hours maintained by such employees as required by the Act.

## II. WILLFUL FAILURE AND REFUSAL TO PAY OVERTIME

6. Ms. Zamora and Ms. Rader allege, on behalf of themselves and the other similarly situated employees, that Credit Suisse's failure to pay overtime was knowing and willful. Accordingly, Ms. Zamora, Ms. Rader and the other employees are entitled to recover all overtime pay due for overtime hours worked within the last three (3) years from the later of the date of filing this lawsuit, or the date the particular employee joins the lawsuit by filing a "Consent to Become Party Plaintiff" form (similar in form to the consent forms signed by Ms. Zamora and Ms. Rader and attached hereto as composite Exhibit "A") with the Court. Ms. Zamora and Ms. Rader also seek, on behalf of themselves and other employees, an additional equal amount as liquidated damages, plus prejudgment interest on the overtime wages due and owing, and attorneys' fees and costs.

## III. NATURE OF THE CASE

### THE COMPANY

7. Credit Suisse is a leading global investment bank serving institutional, corporate, government and individual clients. Credit Suisse's businesses include securities underwriting, sales and trading, investment banking, private equity, financial advisory services, investment research, venture capital, correspondent brokerage services and retail online brokerage services. It operates

3

in over 87 locations across more than 39 countries on 6 continents and has over 28,000 staff worldwide.

8. Credit Suisse's retail brokerage arm serves over 5 million customer accounts with over $400 billion in assets. Credit Suisse offers clients a full range of investment products — including stocks, bonds, mutual funds, CDs, insurance and annuities — and services such as advice on retirement planning, asset allocation, overall money management, college funding, estate planning, trust services, and special services for affluent investors.

9. Credit Suisse is a wholly owned subsidiary of Credit Suisse Group based in Zurich, Switzerland. Credit Suisse is one of the world's largest securities firms, with $12.2 billion in revenues in 2000, $10 billion in equity, and $410 billion in assets as of December 31, 2000.

## THE "FINANCIAL CONSULTANTS"

10. To service its clients and thousands of accounts, Credit Suisse employs thousands of domestic and international financial consultants.

11. Typically, individuals hired by Credit Suisse as financial consultants are experienced stockbrokers. Nevertheless, Credit Suisse provides extensive training to these experienced brokers upon hiring and periodically throughout their employment.

12. Each year Credit Suisse also hires and trains inexperienced stockbrokers as financial consultants. Credit Suisse invests a substantial amount of time and money in developing and training its Financial Consultants. Additionally, Credit Suisse provides the FC trainees with salary commitments and incentives among the most generous of any firm.

13. Credit Suisse's financial consultants are also typically provided or assigned accounts/clients or a "book" of clients and prospective clients to solicit for securities sales or other securities transactions.

14. Credit Suisse compensates its financial consultants on a commission basis. Credit Suisse's payout schedule is among the highest in the industry. Additionally, Credit Suisse pays established brokers who join Credit Suisse lavish bonuses, including upfront money, increased payouts upon joining Credit Suisse. The financial consultants earn commissions based on the volume of securities transactions they produce, and, as such, theoretically have virtually unlimited earning power. Upon information and belief, a significant number of Credit Suisse's financial consultants regularly earn in excess of $100,000 per year in commissions. According to the Securities Industry Association, the average retail stockbroker earns about $123,839.00 per year.

### THE SALES ASSISTANTS AND OTHER SUPPORT STAFF

15. Credit Suisse's financial consultants rely on a small army of non-exempt, hourly sales assistants, wire operators, and other similarly situated persons to perform the routine, clerical tasks incidental to the financial consultants conducting the business of securities sales.

16. In comparison to the lucrative compensation Credit Suisse pays its financial consultants, its sales assistants, wire operators, cashiers, and other non-exempt hourly employees who support the financial consultants and Credit Suisse management are paid very low wages.

17. Unlike the financial consultants, the sales assistants and other non-exempt, hourly employees, have no accounts or customers "assigned" to them. Nor did or does Credit Suisse give the sales assistants or other non-exempt, hourly employees, any discretion to deal with Credit Suisse's customers' accounts. Rather, financial advice may only be given by the financial consultant to whom the sales assistant is assigned.

18. Moreover, in contrast to the financial consultants, the sales assistants, cashiers, and other non-exempt, hourly employees are not paid on a commission basis, do not receive management titles, upfront bonuses or loans and the like regularly awarded to Credit Suisse's financial

consultants.

19. During the course of Ms. Zamora and Ms. Rader's employment as a sales assistant at Credit Suisse, they were assigned to work for one or more financial consultants. Ms. Zamora and Ms. Rader's duties were routine clerical tasks such as ordering supplies, getting coffee for clients and financial consultants, making copies, filling out and submitting expense reports for their assigned financial consultants, answering telephones, typing letters, forms, and reports, processing outgoing mail, establishing, organizing and maintaining files, utilizing word processing, spreadsheet and similar basic software programs, operating the telephone switchboard (relieving the receptionist), taking messages for her assigned financial consultants or others in their office, ordering food for the people in the office, scheduling travel and entertainment, setting personal and business appointments for the financial consultants, and otherwise assisting her assigned financial consultants and others in the office.

## UNPAID OVERTIME

20. Credit Suisse's sales assistants, and other non-exempt, hourly employees, as a condition of continued employment, were/are regularly forced to work nights, weekends and holidays processing the routine clerical work stemming from the thousands of Credit Suisse's clients' brokerage accounts which generate revenues for Credit Suisse and commissions for the financial consultants. Although the sales assistants and the other non-exempt, hourly employees are regularly required to perform such additional, overtime work, they are regularly and routinely paid no overtime compensation. It is not clear on what, if any, exemption Credit Suisse relies upon in not paying its sales assistants and other non-exempt, hourly employees overtime compensation for working greater than forty (40) hours per week. Indeed, Credit Suisse was well aware of the Act and its applicability to sales assistants as evidenced by its own employee handbook, relevant portions

of which are attached hereto as Exhibit "B." Despite Credit Suisse's specific representation to its non-exempt employees in the employee handbook that they will be paid one and one-half times their regular hourly rate of pay for all hours worked beyond the fortieth hour in a workweek, and that Firm authorized absences shall count as hours worked, the required overtime pay was not paid to the sales assistants and other non-exempt employees. As there appears to be no possible applicable exemption, Defendant Credit Suisse's conduct should be determined willful, so as to extend the statute of limitations for this action to three (3) years. 29 U.S.C. § 255(a).

## IV. STATUTORY BASIS OF CASE

21. This is a collective action brought pursuant to 29 U.S.C. § 216 (Section 16 of the Fair Labor Standards Act) by Plaintiffs on behalf of themselves and other employees of Defendant Credit Suisse, defined as:

> All individuals employed by Defendant Credit Suisse in the U.S. as securities sales assistants or sales assistants, or in other similarly situated, hourly positions, who within three (3) years from consenting to be included in this collective action, worked but were not paid for, overtime work, or were not paid for overtime work at a rate not less than one and one-half times their regular rate of compensation.

22. Jurisdiction of this action is conferred on this Court by 29 U.S.C. § 216(b) (Section 16(b) of the Act), and 28 U.S.C. § 1337, relating to any civil action or proceeding arising under any act of Congress regulating commerce.

23. Plaintiffs, Olga Zamora and Susanna Rader are Florida residents.

24. Defendant, Credit Suisse, is a Swiss corporation with its U.S. principal office and place of business located in New York, New York. At all material times referenced herein, Defendant Credit Suisse was authorized to do business in the State of Florida and maintained offices and agents and transacted regular, not isolated, acts of business in this judicial district, at offices

located herein which are within the territorial jurisdiction of this Court, and otherwise throughout the State of Florida and various other parts of the United States.

25.  At all material times mentioned herein, Credit Suisse was engaged in the business of soliciting and selling securities, providing investment advice to retail and other customers, and engaging in other activities relating to the securities brokerage business throughout this district, the State of Florida, and the various other states of the United States.

26.  Venue lies in the Southern District of Florida pursuant to 28 U.S.C. § 1391 (General Venue Provision), and the Defendant is subject to personal jurisdiction in this district and division.

27.  All conditions precedent to the maintenance of this cause of action have been performed or have occurred.

## VI.  **FACTUAL ALLEGATIONS AND PRAYER FOR RELIEF**

28.  In approximately June, 2000, Ms. Zamora was hired by Credit Suisse as a sales assistant, a nonexempt position under the Fair Labor Standards Act. Ms. Rader was hired by Credit Suisse as a sales assistant in about April 2000. Ms. Zamora and Ms. Rader were hired to work in Credit Suisse's Downtown Miami, Florida office.

29.  Before, during and, upon information and belief, to this day, Credit Suisse employed and employs numerous other individuals as sales assistants, wire operators and in other similarly situated, non-exempt, positions on an hourly basis.

30.  At all material times mentioned herein, the business of the Defendant Credit Suisse, including duties and tasks assigned to and performed by Plaintiffs Olga Zamora, Susanna Rader and similarly situated employees, constituted engaging in interstate commerce. Defendant Credit Suisse transacts business from its numerous offices in the State of Florida and throughout the U.S., with clients throughout the United States, on one or more stock exchanges in other states, and with its

other offices in other states.

31.    During the course of Ms. Zamora and Ms. Rader's employment as sales assistants at Credit Suisse, they was assigned to work for one or more financial consultants. Ms. Zamora and Ms. Rader's duties were routine clerical tasks such as ordering supplies, getting coffee for clients and financial consultants, making copies, filling out and submitting expense reports for her assigned financial consultants, answering telephones, typing letters, forms, and reports, processing outgoing mail, establishing, organizing and maintaining files, utilizing word processing, spreadsheet and similar basic software programs, operating the telephone switchboard (relieving the receptionist), taking messages for her assigned financial consultants or others in their office, ordering food for the people in the office, scheduling travel and entertainment, setting personal and business appointments for the financial consultants, and otherwise assisting her assigned financial consultants and others in the office.

32.    In June 2001, Ms. Zamora ceased her employment with Credit Suisse. Ms. Rader left Credit Suisse in late July 2001.

33.    During the period of Ms. Zamora's and Ms. Rader's employment with Defendant Credit Suisse, Credit Suisse did not make, keep and preserve records of the hours maintained by them as required by the Act.

34.    To Ms. Zamora and Ms. Rader's knowledge and belief, Credit Suisse did not regularly make, keep and preserve records of the hours maintained by the other securities sales assistants and similarly situated hourly employees, as required by the Act. Likewise, prior to May 2001, Credit Suisse violated the Act by failing to post the required summary of employees' right to overtime pay. As a result of this violation, the Act's 3 year statute of limitations period has been tolled.

35. After becoming sales assistants at Credit Suisse, Ms. Zamora and Ms. Rader learned that the sales assistant position for which they were hired and assigned could not be properly accomplished in forty (40) hours a week. They also learned that not only was there no method in which to submit hours for payment of overtime compensation (since Credit Suisse did not keep employee time records or require employees to record their time), but the "unwritten rule" at Credit Suisse was that overtime pay was not available or allowed. Rather, as explained repeatedly by management, this is "the nature of the business." Upon information and belief, other Credit Suisse sales assistants and non-exempt, hourly employees at Credit Suisse's Miami, Florida and other branch offices were and are similarly discouraged from submitting requests for overtime pay to Credit Suisse, although such individuals regularly and routinely are and were required, as a condition of employment, to work greater than forty (40) hours per week.

36. During the period of Ms. Zamora and Ms. Rader's employment with Defendant Credit Suisse, Ms. Zamora and Ms. Rader were regularly and routinely required by Credit Suisse to work greater than forty (40) hours per week, as were other sales assistants in the Credit Suisse Miami, Florida branch office where Ms. Zamora and Ms. Rader worked, as well as throughout the other numerous Credit Suisse offices in various other states of the Untied States. Forty (40) hours was, and upon information and belief, is insufficient and known by Credit Suisse to be insufficient to properly accomplish the numerous tasks given to Ms. Zamora and Ms. Rader and Credit Suisse's other sales assistants, and many of Credit Suisse's other non-exempt, hourly employees. At the same time, however, Credit Suisse failed and refused to compensate Ms. Zamora and Ms. Rader at a rate of not less than one and one-half (1-1/2) times the regular rate at which they were employed, for the work they performed in excess of forty (40) hours in a given week, contrary to the provisions of section 7(a) of the Fair Labor Standards Act of 1938 (29 U.S.C. § 207 (a)).

10

37.     During the period Ms. Zamora and Ms. Rader were employed by Credit Suisse, they became aware of and familiar with other sales assistants and similarly situated employees of Defendants Credit Suisse, who were employed in hourly, non-exempt positions. These employees regularly and routinely were required by Credit Suisse to work greater than forty (40) hours in a single week, but were not compensated by Credit Suisse for such work they performed in excess of forty (40) hours at rates not less than one and one-half (1-1/2) times the regular rate such employees were employed, contrary to the provisions of section 7(a) of the Fair Labor Standards Act of 1938 (29 U.S.C. § 207 (a)).

38.     Compensation is presently due and owing to Ms. Zamora, Ms. Rader and similarly situated employees of Defendant Credit Suisse for overtime work performed but not paid by Defendant.

39.     In addition, Plaintiffs Olga Zamora and Susanna Rader allege that there is due and owing to other Credit Suisse sales assistants, and other similarly situated employees of Credit Suisse, overtime compensation in an amount to be determined once all potential Plaintiffs have opted into this collective action.

WHEREFORE, Plaintiffs requests:

a.     Judgment against Defendant Credit Suisse in the amounts respectively due Plaintiffs, and other Credit Suisse sales assistants, and other similarly situated employees, past and present of Defendant Credit Suisse Inc., for overtime compensation, and an equal additional amount as liquidated damages and/or prejudgment interest as provided for under the Fair Labor Standards Act of 1938, as amended (29 U.S.C. § 216 (b));

b.     The costs of this action as provided for under the Fair Labor Standards Act of 1938, as amended (29 U.S.C. § 216 (b)); and

11

c.  An award to Plaintiffs of attorneys' fees for the prosecution of this action, as provided for under the Fair Labor Standards Act of 1938, as amended (29 U.S.C. § 216(b)).

### DEMAND FOR TRIAL BY JURY

Pursuant to Federal Rule of Civil Procedure 38(B), Plaintiff demands trial by jury on all issues so triable.

RESPECTFULLY SUBMITTED this 27 day of August, 2001.

GENOVESE LICHTMAN JOBLOVE & BATTISTA
Attorneys for Plaintiffs
Bank of America Tower, 36th Floor
100 S.E. Second Street
Miami, Florida 33131
Telephone: (305) 349-2300
Facsimile: (305) 349-2310

_____
Jonathan E. Perlman, Esq.
Florida Bar Number 773328

X:\Documents\WORK\Zamora, Olga\Pleadings\COMPLAINT.wpd

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

OLGA ZAMORA, SUSANNA RADER on
behalf of themselves and other similarly
situated persons,

CASE NO.

JURY TRIAL DEMANDED

Plaintiffs,
vs.

CREDIT SUISSE FIRST BOSTON (USA), INC.,

Defendant.
_____/

**CONSENT FORM**

**CONSENT OF INDIVIDUAL EMPLOYEE TO BECOME PARTY PLAINTIFF PURSUANT TO SECTION 216(b) OF THE FAIR LABOR STANDARDS ACT**

I, __OLGA ZAMORA__, a former non-exempt employee of Defendant Credit Suisse First Boston Corporation at Credit Suisse's Downtown Miami, Florida office, worked overtime for Defendant Credit Suisse First Boston Corporation without payment of overtime wages within the last three (3) years, and hereby consent to become a party plaintiff in the present action. I understand that by filing this form with the Court, I am agreeing to join this action as a party plaintiff, to be bound by any judgment rendered in this case, and to be represented in such action by counsel for the collective plaintiffs, JONATHAN E. PERLMAN, Esq., Genovese Lichtman Joblove & Battista, Bank of America Tower, Suite 3600, 100 S.E. Second Street, Miami, Florida 33131.

Dated: August 10th, 2001

NAME: OLGA ZAMORA
Address: 9331 SW 4 St. #108
         Miami, FL 33174
Social Security #: 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
Phone No:  (H) 786-269-6044
           (W) 305-250-5301

**EX. "A"**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

OLGA ZAMORA, SUSANNA RADER on
behalf of themselves and other similarly
situated persons,

CASE NO.

JURY TRIAL DEMANDED

Plaintiffs,
vs.

CREDIT SUISSE FIRST BOSTON (USA), INC.,

Defendant.
_____/

**CONSENT FORM**

**CONSENT OF INDIVIDUAL EMPLOYEE TO BECOME PARTY PLAINTIFF PURSUANT TO SECTION 216(b) OF THE FAIR LABOR STANDARDS ACT**

I, __SUSANNA RADER__, a former non-exempt employee of Defendant Credit Suisse First Boston Corporation at Credit Suisse's Downtown Miami, Florida office, worked overtime for Defendant Credit Suisse First Boston Corporation without payment of overtime wages within the last three (3) years, and hereby consent to become a party plaintiff in the present action. I understand that by filing this form with the Court, I am agreeing to join this action as a party plaintiff, to be bound by any judgment rendered in this case, and to be represented in such action by counsel for the collective plaintiffs, JONATHAN E. PERLMAN, Esq., Genovese Lichtman Joblove & Battista, Bank of America Tower, Suite 3600, 100 S.E. Second Street, Miami, Florida 33131.

Dated: 5/15/01

NAME: Susanna Rader
Address: 7403 NW 80th ST
Tamarac, FL 33321
Social Security #: 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
Phone No: (H) 954-464-6810
(W) 617-494-8413

**EX. "A"**



**Employee Handbook**

Florida

Miami

Donaldson, Lufkin & Jenrette

EX. "B"

- Temporary employees are not eligible to participate in any benefit programs.

- Executive Employee.

    Officers and other employees who perform management functions or technical services of a sophisticated nature (e.g., investment banking analysts, traders, salespersons and research analysts). Such employee is "exempt" as described below.

- Staff Employee.

    All other employees not characterized as "Executive" (e.g., secretaries, administrative assistants, clerks, technicians and some supervisors of other staff employees). Such employee may be "exempt" or "non-exempt" as described below.

- Exempt Employee.

    By virtue of job responsibilities, an employee who is not eligible for overtime pay.

- Non-exempt Employee.

    By virtue of job responsibilities, an employee who is eligible for overtime pay.

You will be informed of your employee classification and of your status as an exempt or non-exempt employee at the commencement of your employment. If you change positions or duties during your employment as a result of a promotion, transfer or otherwise, or your position is reclassified, you will be informed of any change in your classification and/or status. Please direct any questions regarding your classification and/or status to the Regional Manager or the Human Resources Department in New York.

## Work Hours

For full-time, non-exempt employees, your weekly salary is intended to compensate you for all hours worked up to 40 hours. In most areas within DLJ, the most common work schedule is an eight (8) hour workday, 9:00 a.m. through 5:00 p.m., with one (1) hour off for lunch. This means that normally many employees will work only 35 hours out of their 40-hour schedule. For purposes of salary administration and the calculation of overtime, the DLJ workweek is from Thursday through Wednesday.

## Punctuality And Attendance

For your area to run smoothly and efficiently, it is important that you report to work promptly. Punctuality will be considered in performance and salary reviews. Unexcused lateness or absences may result in disciplinary action, up to and including termination.

If you cannot report to work because of illness or emergency, you must call your supervisor at the earliest possible time before your scheduled starting time.

## Overtime

Due to the nature of DLJ's business, it is sometimes necessary for employees to work beyond the usual working hours. While it is not DLJ's intention for overtime to become a regular part of the work schedule, overtime may be anticipated in any position. Employees are expected to work overtime as requested by their supervisors and all overtime should be approved in advance.

DLJ's regular workweek is 40 hours, Thursday through Wednesday. In most areas, the most common work schedule is 9:00 a.m. to 5:00 p.m., with one (1) hour off for lunch (35 hours of actual work). Non-exempt employees who work up to 40 hours, but not less than 35 hours, in any given week will receive a full week's salary and will be paid overtime for all hours worked over 40 as follows:

- The regular hourly rate is calculated by dividing an employee's weekly salary by 40 hours.

- The overtime rate is calculated at one and one-half (1½) times the regular hourly rate for all hours worked in excess of 40 hours.

- Whenever an employee does not report for work because of an authorized absence (e.g., holidays, sick days, vacation), seven (7) hours per day are credited toward the 40 hour workweek for purposes of calculating hours worked.

- Whenever an employee works on a Saturday, Sunday or holiday, payment will be made at the regular hourly rate for those hours which bring the employee's total hours for the week to 40 hours and at the overtime rate for all additional hours.

Payment due for overtime worked will be included in the employee's regular paycheck. Overtime is usually paid one pay period later than the period during which the overtime was worked, providing that the hours worked are reported promptly.

If you are classified as an exempt employee, you are not eligible to receive overtime pay.

### Recording Your Hours

DLJ is required to keep an accurate record of the hours worked by all non-exempt employees. Therefore, you must record the actual hours you work each day on a timesheet or time card. In

areas where timesheets are used, you are responsible for ensuring that the timekeeper has received your timesheet and that your hours have been recorded correctly. In areas where time cards are used, your supervisor will explain the time recording procedures.

In addition, all exempt employees must account for their daily attendance by submitting attendance records to their supervisors or designated record keepers.

**Meal Periods And Meal Allowances**

Every employee may take a meal break of one (1) hour per day.

DLJ will reimburse all full-time and part-time staff employees (part-time staff employees must work at least six (6) hours that day) for the cost of one (1) meal when they work, with prior approval, during any of the following periods:

- After ten and one-half (10 ½) hours on Monday through Friday.
- At least four (4) hours on a weekend or holiday.

This meal allowance is limited to $5.00 for staff employees and is unavailable if DLJ provides a meal. Any exceptions must be approved by your Department Head.

If you are an exempt staff employee and work at least five (5) hours on a weekend or holiday, you will receive a combined meal and transportation allowance as defined below.

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

OLGA ZAMORA, SUSANNA RADER on behalf of themselves and other similarly situated persons

**DEFENDANTS**

CREDIT SUISSE FIRST BOSTON CORPORATION

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF: Miami-Dade County
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT:
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

A. Dade 1:01CV3645/kmm/O'Sullivan

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Jonathan E. Perlman, Esq. (305) 349-2300
Genovese Lichtman Joblove & Battista
100 S.E. Second St., 36th Floor, Miami, FL 33131

ATTORNEYS (IF KNOWN)

(d) CIRCLE COUNTY WHERE ACTION AROSE: **DADE**, MONROE, BROWARD, PALM BEACH, MARTIN, ST. LUCIE, INDIAN RIVER, OKEECHOBEE HIGHLANDS

## II. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX ONLY)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (For Diversity Cases Only)
(PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐1 | ☐1 | Incorporated or Principal Place of Business In This State | ☐4 | ☐4 |
| Citizen of Another State | ☐2 | ☐2 | Incorporated and Principal Place of Business In Another State | ☐5 | ☐5 |
| Citizen or Subject of a Foreign Country | ☐3 | ☐3 | Foreign Nation | ☐6 | ☐6 |

## IV. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## V. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| A CONTRACT | A TORTS | | FORFEITURE/PENALTY | A BANKRUPTCY | A OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | B☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury – Med. Malpractice | B☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury – Product Liability | B☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | B☐ 630 Liquor Laws | **A PROPERTY RIGHTS** | B☐ 450 Commerce/ICC Rates/etc |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers Liability | **PERSONAL PROPERTY** | B☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 370 Other Fraud | B☐ 650 Airline Regs | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| B☐ 152 Recovery of Defaulted Student Loans (Excl Veterans) | ☐ 345 Marine Product Liability | ☐ 371 Truth in Lending | B☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| B☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal Property Damage | B☐ 690 Other | | ☐ 850 Securities/Commodities/Exchange |
| ☐ 160 Stockholders Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 385 Property Damage Product Liability | **A LABOR** | **B SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | | ☒ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| **A REAL PROPERTY** | **A CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | B☐ 510 Motions to Vacate Sentence | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| B☐ 220 Foreclosure | ☐ 442 Employment | **HABEAS CORPUS:** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | B☐ 530 General | A☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | A☐ 535 Death Penalty | | A☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | B☐ 540 Mandamus & Other | | A☐ 871 IRS – Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions A OR B |
| ☐ 290 All Other Real Property | | B☐ 550 Civil Rights | | | |
| | | B☐ 555 Prison Condition | | | |

## VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

29 U.S.C. Section 216(b) -- to recover unpaid overtime compensation earned by non-exempt employees in national collective action.

**LENGTH OF TRIAL** via 30 days estimated (for both sides to try entire case)

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A **CLASS ACTION** UNDER F.R.C.P. 23
Collective Action
**DEMAND $**
CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ YES   ☐ NO

## VIII. RELATED CASE(S) (See instructions):
IF ANY
JUDGE _____ DOCKET NUMBER _____

DATE: August 21, 2001

SIGNATURE OF ATTORNEY OF RECORD

$150.00   84814

**FOR OFFICE USE ONLY**

RECEIPT #_____ AMOUNT_____ APPLYING IFP_____ JUDGE_____ MAG. JUDGE 08/27/01