**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**MIAMI DIVISION**

OLGA ZAMORA, SUSANNA RADER on
behalf of themselves and other similarly
situated persons,

               Plaintiffs,

vs.

CREDIT SUISSE FIRST BOSTON
CORPORATION,

               Defendant.

_____/

CASE NO.: 01-3645-CIV-MOORE
Magistrate Judge O'Sullivan

## SETTLEMENT AGREEMENT

The parties to the above-captioned civil action (the "Action"), by and through their undersigned attorneys, hereby enter into the following Settlement Agreement (the "Settlement Agreement" or the "Agreement"), subject to the approval of the Court.

WHEREAS, Plaintiffs Olga Zamora and Susanna Rader commenced a civil action against Credit Suisse First Boston Corporation (together with Donaldson, Lufkin & Jenrette Securities Corp. ("DLJ") and all of their other direct and indirect affiliates, subsidiaries, parents, predecessors and successors "CSFB" or the "Defendant") by filing a Complaint (the "Complaint") on August 27, 2001 in the United States District Court for the Southern District of Florida, in <u>Olga Zamora, Susanna Rader, on behalf of themselves and other similarly situated persons v. Credit Suisse First Boston Corporation</u>, No. 01-3645-CIV-MOORE (S.D. Fla.); and

WHEREAS, Zamora and Rader were employed full-time by DLJ as sales assistants in DLJ's Private Client Services ("PCS") unit prior to the merger of DLJ and CSFB effective as of November 3, 2000 (the "Merger"); and

WHEREAS, following the Merger, employees of DLJ's PCS unit, including Zamora and Rader, became employees of CSFB; and

WHEREAS, Zamora and Rader have brought the Action as a collective action on behalf of themselves and other allegedly similarly situated persons pursuant to 29 U.S.C. § 216(b); and

WHEREAS, the Complaint alleges that CSFB has failed and refused to pay overtime compensation to Plaintiffs Zamora and Rader and other similarly situated employees in violation of Section 7 of the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. § 207; and

WHEREAS, Raul Aguero, Odette Aguila, Yizenia Alvare, Michael V. Baker, Fernanda Barros, Jorge A. Bustamante, Forrest W. Cannon, Michelle B. Casanova, Odalys Chapman, Diana Fernandez, Sonia M. Fernandez, Graham A. Galvin, Juan C. Gomez, Sonia Guedes-Dillman, Rocio Harb, Valeria F. Ibarra, Raitza G. Iglesias, Kathryn Johnson, Maria F. Lacayo, Maria A. Maya, Mildred Ottenwalder, Alicia Ramirez, John Rath, Kristen Rath, Regine Rigal, Sirisha Sangavaram, Leslie O. Taheri, Lisa Tomas, Madeleine H. Vega, and Miriam R. Wellons (together with Zamora and Rader, the "Pre-Notice Plaintiffs") and Lourdes Herrero and Deborah Maya, filed consent forms with the Court to join this action as plaintiffs claiming to be similarly situated persons who CSFB allegedly failed and refused to pay overtime compensation to in violation of Section 7 the FLSA; and

WHEREAS, additional persons shall be permitted to join this Action as plaintiffs after the date of this Agreement, such that the plaintiffs in this collective Action shall include not only the Pre-Notice Plaintiffs, but also those additional persons who have joined or may hereafter join the Action by filing with the Court their written consent to become a plaintiff and to be bound by the terms of the parties' settlement, this Agreement, and the judgment of the Court (collectively , the "Plaintiffs"); and

WHEREAS, CSFB has answered the Complaint, has denied all material allegations of wrongdoing contained therein and has alleged defenses to Plaintiffs' claims; and

2

WHEREAS, CSFB has expressly denied and continues vigorously to deny that it owes unpaid overtime compensation to any Plaintiff or to any allegedly similarly situated person, and denies all charges and claims of wrongdoing; and

WHEREAS, the Court has made no findings as to the proper classification of any plaintiff under the FLSA or that CSFB engaged in any wrongdoing or in any wrongful conduct or otherwise acted improperly or in violation of any law, duty or regulation in any respect; and

WHEREAS, CSFB has conducted a substantial investigation, recognizes that the issues presented in this Action are unlikely to be resolved without extensive and costly pretrial proceedings and that further litigation will cause inconvenience, distraction, disruption, delay, and expense disproportionate to the potential benefits of litigation, and has taken into account the risk and uncertain outcome inherent in any litigation; and

WHEREAS, CSFB has therefore concluded that the terms and conditions of the Settlement embodied in this Agreement (the "Settlement") are fair, reasonable, and adequate and in its best interests; and

WHEREAS, Counsel for the Plaintiffs, Genovese Joblove & Battista, ("Plaintiffs' Counsel") has conducted substantial discovery and investigation and recognizes the expense and difficulties of continued proceedings necessary to prosecute the Action through trial and subsequent appeals, as well as the risk and uncertainty inherent in any litigation and, in particular, the risk that many Plaintiffs might recover only part of what they claim, or nothing at all, depending on the resolution of legal issues, the weight given to documentary evidence, and on the fact finder's determinations of individual witnesses' veracity and credibility; and

WHEREAS, Plaintiffs' Counsel has therefore concluded, in consultation with the Pre-Notice Plaintiffs, that the terms and conditions of the Settlement are fair, reasonable, and adequate and in the best interests of the Plaintiffs and that this Settlement will result in a substantial and material benefit to all settling Plaintiffs; and

WHEREAS, the terms and language contained in this Agreement and the Settlement embodied herein are the product of good faith, arms-length negotiations, without collusion, by independent counsel representing the Plaintiffs and the Defendant (the "Parties"), respectively;

NOW, THEREFORE, in consideration of the mutual promises and agreements hereinafter set forth, it is hereby stipulated and agreed by, between, and among the Parties that the foregoing recitals are incorporated in this Agreement by reference and made part of this Agreement and, subject to the approval of the Court, it is further agreed as follows:

The Release

1.      All claims, rights, or causes of action arising out of or relating to any alleged violation of the FLSA, 29 U.S.C. 201 et seq. or any other federal, state, or local law, statute, rule or regulation concerning the computation of, entitlement to, or payment of overtime compensation, whether now known or unknown, whether based upon common, statutory, federal, state, local or other law, which have been, could have been, or in the future might be asserted in this Action, in any action in any court of competent jurisdiction, or in any arbitration or administrative proceeding, by any Plaintiff (as defined in paragraphs 4, 5 and 6 and as limited thereby), regardless of whether such Plaintiff has consented to join the Action on or before the effective date of this Agreement or thereafter, against CSFB or any of its present or former officers, directors, principals, employees, agents, attorneys, insurers, representatives, affiliates, parents, subsidiaries, predecessors, successors or assigns, which claims, rights, or causes of action are in connection with, arose out of or hereafter will arise out of, or relate to any of the allegations or claims that have been, could have been, or in the future might be asserted in the Action (the "Settled Claims"), shall be compromised, settled, released, discharged, and dismissed with prejudice on the terms and conditions set forth below.

2.      The Opt-in Plaintiffs, as defined in paragraphs 5 and 13, who work or live in the State of California now or at any time relevant to the allegations contained in the Complaint agree that they have waived, released, discharged and dismissed the Settled Claims, with full knowledge of any

4

and all rights they may have, and they hereby assume the risk of any mistake of fact in connection with the true facts involved, or with regard to any facts which are now unknown to them. In this connection, all rights under California Civil Code Section 1542 are expressly waived. California Civil Code Section 1542 provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

The Consideration

3.      In consideration for the full settlement, release, discharge, satisfaction and compromise of all of the Settled Claims; CSFB agrees to make available for the payment of the Settled Claims, and attorneys' fees and costs for Plaintiffs' Counsel as set forth in paragraph 34, a sum not less than One Million One Hundred Sixty Thousand Dollars ($1,160,000.00) (including the employees' and employer's shares of any taxes required by law to be withheld and paid upon such Settled Claims) (the "Minimum Settlement Consideration") and not exceeding One Million Seven Hundred Thousand Dollars ($1,700,000.00) (including the employees' and employer's shares of any taxes required by law to be withheld and paid upon such settled claims and attorneys' fees and costs for Plaintiffs' Counsel) (the "Maximum Settlement Consideration") (together the "Settlement Consideration") and, in addition, to pay the actual Costs of Administration, as defined in paragraph 35, up to a maximum of $50,000.00 (the "Costs of Administration"), all subject to the terms of this Agreement.

The Plaintiffs

4.      The "Plaintiffs" in this Action shall consist of Zamora and Rader, who filed the Complaint commencing the lawsuit, and each person eligible to join (as defined in paragraph 5) and who has joined, or hereafter may join, this Action as an Opt-In Plaintiff (as defined in paragraphs 5 and 13) by filing with the Court a written consent, in form and content acceptable to the Court, by

5

which such person expressly gives his or her consent to become a plaintiff in this Action and to be bound by the terms of this settlement and the judgment of the Court.

5.      Persons eligible to join this Action as Plaintiffs in the future (i.e., eligible to "opt in") are those who are within the following definition:

> Any person, whether currently employed by CSFB or not, who at any time during the three years preceding the date this Settlement is approved by the Court, (the "Relevant Period") was employed full-time as a sales assistant, or as a non-exempt administrative assistant, clerk, cashier, operations assistant, operations analyst, trading assistant, wire operator, or receptionist in the Private Client Services unit of DLJ or CSFB ("PCS"), and who, during the Relevant Period, believes he or she worked more than forty (40) hours in a given week at PCS (including lunch breaks and other breaks properly includable under the FLSA) but was not paid for the hours actually worked in excess of forty (40) hours or was paid at a rate less than one and one-half times his or her regular rate of pay for the hours actually worked in excess of forty (40) hours.

6.      It is understood and acknowledged that CSFB or DLJ PCS employees who participated in its Financial Consultant Training Program or Summer Intern Program, regardless of whether they became Financial Consultants, are not, on the basis of participation in that program alone, eligible to join this lawsuit.  It is further understood and acknowledged that it is only employees and former employees employed full-time in the domestic PCS offices of DLJ and CSFB in the positions described in paragraph 5 above who are eligible to join this action.  Employees and former employees of other divisions of DLJ or CSFB are not eligible to and may not join this action.

7.      Defendant has dutifully searched to identify all living employees and former employees who could be eligible to be Plaintiffs and certifies that, to the best of its ability, it has identified all eligible potential Plaintiffs.

Notice of Settlement

8.     A package of materials in the form attached hereto as Exhibit 1 (collectively , the "Notice"), which has been prepared and approved by Counsel for the Parties, and approved by the Court, shall be mailed to each person eligible to join the Action as a Plaintiff, as defined in paragraphs 4 and 5, and whose mailing address can be located by CSFB through reasonable effort, but excepting the Pre-Notice Plaintiffs (collectively, the "Notice Recipients"). The Notice shall describe the Action, summarize the overall settlement and specify the terms of the Settlement for the Plaintiffs. The Notice shall consist of the following documents: a Cover Letter, a Notice of Settlement, a Settlement Check with Attorney-in-Fact Authorization, a Consent Form, a Questions & Answers Sheet, Proof of Claim Instructions, a Proof of Claim Affirmation Form, a Compensation History Form, a Time Report Record, a Computation Form, and a pre-addressed Return Envelope.

9.     CSFB shall mail the Notice, or cause it to be mailed, to each Notice Recipient no later than thirty (30) days after the Court's issuance, and entry, of an Order approving and directing the distribution of the Notice or in accordance with such other schedule as may be ordered by the Court. The Notice shall be mailed to each Notice Recipient, addressed to the current or last known home address available from CSFB records, by United States Postal Service, with first-class postage prepaid for each Notice mailed. CSFB shall pay the actual costs of printing (it being understood that CSFB may do the printing itself), postage, and handling for reproducing and distributing the Notice, and such costs (including any internal printing costs) shall be included in the Costs of Administration, as defined in paragraph 35.

10.     Each Notice Recipient shall receive, as a component of the Notice, a Settlement Check payable to him or her and drawn on sufficient funds deposited by CSFB in a federally chartered bank (the "Payor's Bank"). Settlement Checks will vary in gross amount from a minimum of $50.00 to a maximum of $300.00, less withholding for applicable federal, state, and local taxes

or other applicable withholding. The amount of each Notice Recipient's Settlement Check will depend on the duration of that individual's employment by PCS as a sales assistant, or as a non-exempt administrative assistant, clerk, cashier, operations assistant, operations analyst, trading assistant, wire operator, or receptionist during the Relevant Period. The aggregate gross amount of the consideration that will be distributed to Notice Recipients with the Notice will total approximately One Hundred Ten Thousand Dollars ($110,000.00).

11.     "Settlement Checks" refers, collectively, to all Settlement Checks provided to the Pre-Notice Plaintiffs in accordance with paragraph 15, and all Settlement Checks distributed to the Notice Recipients with the Notice in accordance with paragraph 10. CSFB will withhold from the Settlement Checks an amount for taxes to be paid by employees as required by the federal, state, and local laws applicable in the locality in which the Notice Recipient or Pre-Notice Plaintiff resides as reflected in CSFB's records and will pay the employer's share of any applicable federal, state, and local taxes. The amounts (a) withheld and (b) to be paid for the employer's share of taxes are part of and shall be paid out of the Settlement Consideration.

Opt-In Procedure

12.     On the reverse side of each Settlement Check shall be printed above the space for endorsement an agreement, substantially similar to the form attached hereto as Exhibit 1.A (the "Authorization"), authorizing Plaintiffs' Counsel to sign as attorney-in-fact on the recipient's behalf a Consent Form substantially similar to the form attached hereto as Exhibit 1.B (the "Consent Form"), and to file with the Court the recipient's consent to join the lawsuit, in a form acceptable to the Court. Any Notice Recipient who elects to join the Action as a Plaintiff, i.e., to "opt in," must authorize Plaintiffs' Counsel to execute and file his or her consent to join the Action and participate in the Settlement by endorsing the Settlement Check and presenting it to a bank within forty-five (45) days of the date on which the Notice was mailed (the "Opt-In Deadline"). Notice Recipients

are not entitled to present the settlement check or receive payment on it without joining the Action. Each Settlement Check will bear a legend directing the Payor's Bank not to accept the Settlement Check or make payment on it if it is unsigned or if the Authorization, or any part of it, has been supplemented, altered or deleted.

13.    All Settlement Checks are to be returned by the Payor's Bank to the Settlement Administrator, as defined in paragraph 30. Within a reasonable time, but in no event more than sixty (60) days after the Opt-In Deadline, Counsel for the Parties shall obtain from the Settlement Administrator (i) a list, in alphabetical order, which includes the name of each Notice Recipient and Pre-Notice Plaintiff who endorsed and negotiated a Settlement Check and the amount of each such Settlement Check, (ii) copies of all executed Authorizations, and (iii) a summary report indicating the total amount of the Settlement Consideration paid out, that is, the aggregate dollar amount of all Settlement Checks actually negotiated. Plaintiffs' Counsel shall promptly thereafter (i.e., within thirty (30) days) file executed Consent Forms with the Court, in a form acceptable to the Court, on behalf of those Notice Recipients consenting to join the Action as Plaintiffs (the "Opt-In Plaintiffs").

14.    Each Opt-In Plaintiff, by endorsing and negotiating a Settlement Check, thereby authorizes Plaintiffs' Counsel to execute and file with the Court on his or her behalf a Consent Form by which the Opt-In Plaintiff (i) agrees to join the Action as a party plaintiff, (ii) asserts and simultaneously settles any claim he or she may have had for overtime compensation earned but not paid during the Relevant Period (his or her "Settled Claim" and together collectively the "Settled Claims"), (iii) agrees to be bound by the terms of this Settlement, including the release and discharge of CSFB and any of its present or former officers, directors, principals, employees, agents, attorneys, insurers, representatives, affiliates, parents, subsidiaries, predecessors, successors and assigns from all liability arising from any Settled Claim, (iv) agrees to be bound by the judgment of the Court in this Action and, accordingly, to forgo any right he or she may have, or may have had, or in the future

9

might have to assert any Settled Claim in any other legal proceeding, including any other action in any court or any arbitration or administrative proceeding, and (v) agrees to be represented in this Action by Plaintiffs' Counsel.  Each Opt-In Plaintiffs' consent to join the lawsuit shall be effective as of the date on which his or her consent to join the lawsuit is filed with the Clerk of the Court.

Pre-Notice Plaintiffs

15.     Settlement Checks in the aggregate amount of Six Hundred Thousand Dollars ($600,000.00) payable to the Pre-Notice Plaintiffs shall be mailed to Plaintiffs' Counsel within thirty (30) days of the later of the Court's final approval of this settlement or final negotiation with CSFB as to the amounts to be paid to any individual Pre-Notice Plaintiff.

16.     The amount payable to each Pre-Notice Plaintiff will be determined based upon completely prepared Proof of Claim Forms already submitted to CSFB, including a Proof of Claim Affirmation that has been signed under penalty of perjury.  Pre-Notice Plaintiffs will not receive a Settlement Check as set forth in Paragraph 10 or be entitled to submit a Proof of Claim for Supplemental Payment.  Named Plaintiffs, Zamora and Rader, shall each receive from the $600,000.00 payable to the Pre-Notice Plaintiffs, an additional $2,500.00 reflecting their contributions in commencing and pursuing this action.

Proof of Claim

17.     Any Opt-In Plaintiff who believes that he or she has a claim against CSFB based on overtime worked but not paid during the Relevant Period which exceeds the amount of the Settlement Check he or she received with the Notice shall have the right under this Settlement to document his or her claim in this Action by submitting a Proof of Claim for Supplemental Payment. No Proof of Claim for Supplemental Payment will be accepted from any person who has not joined the Action by endorsing and negotiating a Settlement Check and thereby authorizing Plaintiffs'

10

Counsel to execute and file with the Court his or her consent to join the lawsuit, as described in paragraph 12.

18.     The Notice shall contain Proof of Claim Forms, substantially in the form attached hereto as Exhibits 1.C through 1.G.  An Opt-In Plaintiff who elects to submit a Proof of Claim must complete the Proof of Claim forms and mail the completed forms, including a Proof of Claim Affirmation that has been signed under penalty of perjury, to the Settlement Administrator within sixty (60) days of the date on which the Notice was mailed ("Proof of Claim Deadline"). Proofs of Claim for Supplemental Payment postmarked after the Proof of Claim Deadline or received by the Settlement Administrator more than (10) days after the Proof of Claim Deadline will not be accepted.  Any and all claims which could have been asserted as Proofs of Claim in this Action but which are not asserted as set forth above shall be deemed to have been and be released and waived.

19.     Within thirty (30) days following the Proof of Claim Deadline, Counsel for the Parties shall obtain from the Settlement Administrator a written report (i) listing, in alphabetical order, the name of each Opt-In Plaintiff who filed a timely Proof of Claim and the amount of each such Opt-In Plaintiffs' Proof of Claim, (ii) enclosing a copy of each Proof of Claim Affirmation, including attachments and enclosures, which has not already been provided to Counsel for the Parties, and (iii) reporting the aggregate amount of all timely Proofs of Claim.

20.     The Settlement Administrator shall review all Proofs of Claim for accuracy and completeness within twenty (20) days of receiving each Proof of Claim and request additional information or documents from the Opt-In Plaintiffs in writing, if necessary.  The Settlement Administrator shall copy Counsel for the Parties on all correspondence with the Notice Recipients. The Settlement Administrator will immediately forward each reviewed Proof of Claim to Counsel for the parties once completed and accurate.  Proofs of Claim will be evaluated jointly by CSFB's and Plaintiffs' Counsel to assess the adequacy and credibility of the information and supporting

documentation supplied.  Within thirty (30) days of receiving each Proof of Claim, each Party will evaluate each Proof of Claim and inform the other Party's counsel as to whether the Proof of Claim is, in that Party's opinion, to be reduced or disallowed in its entirety or that the Proof of Claim is approved without change.  Each Proof of Claim which is determined jointly by CSFB's and Plaintiffs' Counsel to be adequately supported by reliable information and documentation shall be approved.  If it is jointly determined by CSFB's and Plaintiffs' Counsel that any Proof of Claim is not adequately supported by reliable information or documentation, that Proof of Claim may either be reduced by an amount jointly agreed upon by CSFB's and Plaintiffs' Counsel or disallowed in its entirety.  In the event that CSFB's and Plaintiffs' Counsel are unable to agree upon the disposition of any Proof of Claim within sixty (60) days of its receipt, that Proof of Claim, together with the recommendations of CSFB's and Plaintiffs' Counsel, shall be referred to the Court for resolution.  If either side fails to timely submit its recommendations to the Court, the Court shall be authorized to make its final determination based solely on the recommendation submitted.

21.    The "Maximum Distributable Consideration" refers to the remainder after subtracting from the Maximum Settlement Consideration as defined in paragraph 3, (a) the aggregate amount of Settlement Checks issued by CSFB less the aggregate amount of Settlement Checks not negotiated and no longer negotiable; (b) the amount paid for or reserved to pay the amount withheld for the employee's share and the employer's share of applicable federal, state, and local taxes on the Settlement Checks identified in item (a); (c) attorneys' fees and costs paid to Plaintiffs' Counsel, as described in paragraph 34; (d) a mutually agreed-upon sum, if any, reserved for the resolution of disputed claims; and (e) a mutually agreed-upon sum, if any, reserved for payment of Excess Costs of Administration, as defined in paragraph 35.

22.     "Approved Proofs of Claim" shall include all Proofs of Claim which, on the basis of the review and evaluation described in paragraph 20, are approved for payment in their entirety or in a reduced amount.

23.     Although CSFB's and Plaintiffs' Counsel both believe that the amount of the Maximum Distributable Consideration, as defined in paragraph 21, will be sufficient for all Approved Proofs of Claim to be paid in the full approved amount, if the aggregate amount of Approved Proofs of Claim exceeds the Maximum Distributable Consideration all Approved Proofs of Claim will be reduced proportionally and each Approved Proof of Claim will be allotted the proportion of the Maximum Distributable Consideration which that Claim bears to the total of all Approved Proofs of Claim. Pre-Notice Plaintiffs, however, will not be required to return payments received prior to any determination that reductions are necessary.

24.     The balance, if any, of the Minimum Settlement Consideration ($1,170,000.00), remaining after all claims asserted in the Action have been resolved, and after payment of all applicable taxes, attorneys' fees and cost, and the excess Costs of Administration, shall be distributed proportionally among all Opt-In Plaintiffs, as follows: Each Opt-In Plaintiff's Total Claim (the "Total Claim") shall be determined by summing the amount of the Opt-In Plaintiff's Settlement Check and the amount of his or her Approved Proof of Claim, if any. Each Opt-In Plaintiff shall be allocated that proportion of the remaining Minimum Settlement Consideration which is equal to the proportion of his or her Total Claim to the sum of all Total Claims less the amount of the employee's withholding and employer's share of applicable federal, state, and local taxes. CSFB will withhold from any such allocations taxes as required by applicable federal, state, and local laws.

25.     A "Supplemental Settlement Check" refers to a payment made in settlement of an Approved Proof of Claim for Supplemental Payment to an Opt-In Plaintiff, whether such Approved

Proof of Claim is paid in the full approved amount or as a prorated share of the Maximum Distributable Consideration.

26.    Counsel for the Parties shall cause the Settlement Administrator to compute and distribute Supplemental Settlement Checks within thirty (30) days following completion of the review and evaluation of Proofs of Claim described in paragraph 20.   Except for Pre-Notice Plaintiffs, no Supplemental Settlement Checks shall be distributed before all properly submitted Proofs of Claim have been reviewed and evaluated.  However, if the aggregate amount sought in all Opt-In Plaintiffs' Proofs of Claim plus Excess Costs of Administration does not exceed the portion of the remaining Maximum Distributable Consideration, Supplemental Settlement Checks shall be mailed, on a rolling basis, as each Opt-In Plaintiff's Proof of Claim is approved.

27.    Counsel for the Parties shall cause the Settlement Administrator to distribute with each Supplemental Settlement Check a notice, approved by Counsel for the Parties and by the Court as to form and content, which (a) explains the procedure by which the approved amount of the Supplemental Settlement Check was determined, (b) notifies each Opt-In Plaintiff of his or her right under the Settlement to object and request a hearing before the Court if his or her Approved Proof of Claim (before proration, if any) was less than the amount of the Proof of Claim submitted, and (c) informing each Opt-In Plaintiff of the procedures and deadline for submitting such objection.

28.    Any objection by an Opt-In Plaintiff to the amount of a Supplemental Settlement Check must be submitted in writing to, and received by, the Settlement Administrator within fourteen (14) days from the date on which the Supplemental Settlement Checks are mailed.  If a disputed Supplemental Settlement Check is presented for payment pending resolution of the objection/dispute, the objection will be deemed to be and will be waived. Each Supplemental Settlement Check shall bear a legend stating that by negotiating the check (i.e., presenting the check for payment and/or receiving payment) the recipient waives any and all rights to object either to the

Settlement Administrator or to the Court concerning the Settlement, this Agreement and the amount of the Supplemental Settlement Check.

29.     An Opt-In Plaintiff who submits a timely written objection to the amount of his or her Supplemental Settlement Check (the "Objecting Plaintiff") may request an opportunity to appear before the Court, at his or her own expense and at a time to be set by the Court, to present his or her claim for determination by the Court. Unless an Objecting Plaintiff arranges for alternative representation at his or her own expense, he or she will be represented at such hearing by Plaintiffs' Counsel; provided, however, that nothing in this Agreement shall be construed to require Plaintiffs' Counsel to represent any Objecting Plaintiff in such hearings or in any other proceeding if such representation would or could be violative of Rule 11 of the Federal Rules of Civil Procedure or of any ethical consideration.  If the Court awards the Objecting Plaintiff an increased Supplemental Settlement Check, the costs of the hearing, if any, shall be paid out of the Costs of Administration, as provided in paragraph 35.  If the Court does not award the Objecting Plaintiff an increased Supplemental Settlement Check, the costs of the hearing, if any, shall be paid by the Objecting Plaintiff.  It is understood and agreed that neither Plaintiffs' Counsel nor any other individual or entity retained by any Objecting Plaintiff in connection with the hearing may recover any attorneys' fees from CSFB or from any funds connected with this Settlement including from the Costs of Administration, other than as set forth elsewhere in this Agreement.

Plan of Administration

30.     The Parties shall jointly select and engage a service organization which is neither a party to this Action nor controlled by or affiliated with any Party, to serve as Settlement Administrator (the "Settlement Administrator"), subject to the terms of this Agreement and the Plan of Administration attached hereto as Exhibit 2 (the "Plan of Administration"), which is hereby incorporated by reference as if fully set forth herein.

31.     The Settlement described in this Agreement shall be administered substantially as set forth in the Plan of Administration attached hereto as Exhibit 2. The Parties agree to cooperate, act in good faith, and to exercise their best efforts to ensure that the Settlement is administered expeditiously.

32.     The Parties acknowledge that it is their intent to consummate the Settlement and agree to cooperate to the extent necessary to effectuate and implement all terms and conditions of the Settlement and to exercise their best good-faith efforts to accomplish the foregoing terms and conditions of the Settlement.

33.     The Parties may agree, subject to approval of the Court where required, to reasonable extensions of time to carry out any of the provisions of this Settlement.

Attorneys' Fees

34.     The Minimum Settlement Consideration described in paragraph 3 is inclusive of all attorneys' fees and costs to be paid to Plaintiffs' Counsel in connection with this Settlement. Within ten (10) business days of the entry of an Order approving the Settlement and this Agreement, as described in paragraph 36, CSFB will pay to Plaintiffs' Counsel, for attorneys' fees and costs, the amount of Four Hundred Fifty Thousand Dollars ($450,000.00). Plaintiffs' Counsel shall not be paid any other fees or reimbursed for any other costs or expenses by CSFB or by any Plaintiff in this Action.

Costs of Administration

35.     CSFB shall pay the actual Costs of Administration incurred in the implementation and administration of the Settlement, up to a maximum of Fifty Thousand Dollars ($50,000.00). If the actual Costs of Administration exceed that amount, the excess amount (the "Excess Costs of Administration") shall be paid out of the Maximum Settlement Consideration.

a)      Costs of Administration shall include all fees and reimbursements of expenses paid to the Settlement Administrator for administering the Settlement, as described in the Plan of Administration set forth in the attached Exhibit 2, including the costs for sending any Settlement Checks and Supplemental Settlement Checks; the actual reasonable and competitive costs incurred by CSFB in printing and distributing the Notice, as described in paragraphs 8 and 9; the costs of any hearings held to resolve objections, in which Objecting Plaintiffs prevail on their objections; and any other costs, fees, and expenses reasonably incurred in connection with the implementation and administration of the Settlement.  The Costs of Administration shall not include any portion of the attorneys' fees paid to Plaintiffs' Counsel in accordance with paragraph 34.

b)      The Settlement Administrator shall be required to maintain detailed records of all Costs of Administration, including any amounts paid directly by CSFB and reported to the Settlement Administrator, and to provide an accounting of such costs to the Parties at appropriate intervals.

c)      Prior to the computation and distribution of Supplemental Settlement Checks, the Parties, in consultation with the Settlement Administrator, shall estimate the amount, if any, by which the Costs of Administration may exceed $50,000.00 and shall set aside a reserve out of the Settlement Consideration for Excess Costs of Administration.  Any amount reserved for Excess Costs of Administration shall be deducted from the Settlement Consideration in determining the Maximum Distributable Consideration prior to the computation and distribution of Supplemental Settlement Checks, as described in paragraphs 21-27.

Submission and Application to Court

36.     As soon as practicable after this Agreement has been executed, but in no event later than September 27, 2002 (unless such time is extended by the Court), the Parties hereto shall jointly

move the Court for approval of the Settlement and this Agreement. The Parties shall apply jointly for an Order, in the form annexed hereto as Exhibit 3 (the "Order"):

(a)     entering findings of fact and conclusions of law, in the form attached hereto as Exhibit 4 (the "Findings and Conclusions");

(b )    approving the Settlement and this Agreement and judging them to be fair, reasonable and adequate;

(c)     approving the form of Notice attached hereto as Exhibit 1 (the "Notice");

(d)     directing Counsel for CSFB to cause the Notice to be mailed to all persons eligible to join the Action as Plaintiffs, as defined in paragraphs 4 and 5, and who can be identified through reasonable effort;

(e)     directing that Counsel for the Parties, as soon as practicable after the Opt-In Deadline, jointly apply for a final judgment, in the form attached hereto as Exhibit 5, dismissing the Action in its entirety with prejudice, as described in paragraph 37; and

(f)     providing that upon entry of the order and until the entry of a final order and judgment, all settling Plaintiffs will be bound by this Agreement.

<u>Final Judgment and Order of Dismissal</u>

37.     As soon as practicable after the Opt-In Deadline, but in no event later than three (3) months from the date such Notice is mailed (unless such time is extended by the Court), the Parties shall jointly move the Court for entry of a Stipulated Final Order and Judgment, in the form annexed hereto as Exhibit 5 (the "Judgment"), which shall provide for the following:

a)     adding to the caption the names of all Plaintiffs who have consented to join the Action as parties plaintiff;

b)     dismissing the Action in its entirety with prejudice and without costs to any party other than as provided for in this Agreement;

18

c)        ordering that CSFB and any and all of its present or former officers, directors, principals, employees, agents, attorneys, representatives, insurers, affiliates, parents, subsidiaries, predecessors, successors and assigns are released and discharged by each Plaintiff with respect to all Settled Claims and that each Plaintiff is permanently enjoined from asserting any Settled Claim against CSFB or any of its present or former officers, directors, principals, employees, agents, attorneys, insurers representatives, affiliates, parents, subsidiaries, predecessors, successors and assigns; and

d)        ordering that the Court shall retain continuing jurisdiction over the Action and over the parties thereto for purposes of adjudicating any disputes arising under, or requiring the interpretation, enforcement, or implementation of, any provision of this Settlement Agreement or of the Final Stipulated Judgment.

Jurisdiction with Respect to Settlement Administration

38.      The administration of the Settlement and the determination of all disputed questions of law and fact relating to the Settlement shall be within the exclusive jurisdiction of the Court and the Court shall retain continuing jurisdiction over the Parties in connection therewith and for purposes of adjudicating any disputes arising under, or requiring the interpretation, enforcement, or implementation of, any provisions of the Settlement Agreement or of the Final Stipulated Judgment.

39.      Should any Party to this Settlement Agreement find it necessary to seek judicial assistance in the event that any Party defaults with respect to any material obligation hereunder, the non-prevailing party shall pay all costs and expenses the prevailing party incurs thereby, including, without limitation, the non-defaulting party's reasonable attorneys' fees.

Settlement Not Evidence

40.      Whether or not this Settlement Agreement becomes effective, neither this Settlement Agreement nor any Exhibit attached hereto, nor any exhibit, document, or instrument delivered

hereunder, nor any statement, negotiations, transactions, or proceedings in connection therewith shall in any event be construed as, or deemed to be, or offered in this or any other action or proceeding as evidence of (a) an admission or concession on the part of CSFB of any liability or wrongdoing; (b) an admission or concession on the part of CSFB that the Plaintiffs, or any of them, have suffered any damage; or (c) an admission or concession on the part of the Plaintiffs that any of their claims asserted in the Action is without merit.

No Unauthorized Public Comment

41.     Neither the Parties to this Settlement nor their Counsel shall, without the prior written approval of Counsel for the other Party or Parties, issue, authorize, or contribute to the preparation or dissemination of any press release or any other public statement or disclosure concerning this Settlement and this Agreement or any of the terms thereof, or sponsor or participate in any press conference, interview, media appearance, or other discussion open to the public or intended for publication concerning this Settlement and this Agreement or any of the terms thereof.  Each plaintiff agrees to keep strictly confidential any information respecting the resolution of his or her individual Claim (including without limitation the number of hours claimed or any sums paid in resolution of such claim) save as necessary to consult with his or her immediate family, counsel, or accountants, or as required by law.

No Waiver

42.     The waiver by any Party of any breach of this Agreement shall not be deemed or construed as a waiver of any other breach, whether prior, subsequent, or contemporaneous, of this Agreement.

43.     This Agreement, including all Exhibits annexed hereto, constitutes the entire agreement among the Parties and supersedes all prior agreements or understandings, if any, whether oral or written, with regard to the subject matter hereof between the parties hereto.  This Agreement

may not be modified or amended except in a writing signed by or on behalf of all Parties hereto or their successors in interest.

44.     This Agreement, upon taking effect, shall be binding upon and inure to the benefit of the Parties and their respective heirs, executors, administrators, insurers, parents, subsidiaries, affiliates, successors, and assigns and upon any corporation, partnership, or other entity into or with which any Party has merged or consolidated or may merge or consolidate.

45.     All the Exhibits attached hereto are hereby incorporated by reference as if fully set forth herein.

Governing Law

46.     This Agreement shall be construed and enforced in accordance with the laws of the United States and of the State of Florida.

Authority to Sign

47.     Each of the attorneys executing this Agreement warrants and represents that he or she has been duly authorized and empowered to execute this Agreement on behalf of and to bind the Party or Parties on whose behalf he or she signs.

Miscellaneous

48.     This Agreement shall be deemed to have been mutually prepared by the Parties and shall not be construed against either of them by reason of authorship.

49.     This Agreement may be executed in any number of actual or telecopied counterparts and by the different Parties on separate counterparts, each of which when so executed and delivered shall be an original.  The executed signature pages from each actual or telecopied counterpart may be joined together and attached to one such original, which shall then constitute one and the same instrument.

IN WITNESS WHEREOF, the Parties, by their counsel, have executed this Agreement, intending to be legally bound thereby.

Dated: _____          Dated: _9/27 /02____

SIDLEY AUSTIN BROWN & WOOD LLP          GENOVESE JOBLOVE & BATTISTA
Attorneys for Defendant Credit Suisse          Attorneys for Class Plaintiffs
First Boston Corporation          Bank of America Tower, 36th Floor
787 Seventh Avenue          100 Southeast Second Street
New York, New York 10019          Miami, Florida 33131
Telephone: (212) 839-5400          Telephone: (305) 349-2300
Facsimile:  (212) 839-5599          Facsimile:  (305) 349-2310

By: _____          By: _____
        LAURA H. ALLEN                  JONATHAN E. PERLMAN
        Admitted Pro Hac Vice                  Florida Bar No. 773328
                                        CHAD K. LANG
                                        Florida Bar No. 0156922

X:\Documents\Work\U to Z\Zamora, Olga\Pleadings\Settlement Agreement.wpd

22

IN WITNESS WHEREOF, the Parties, by their counsel, have executed this Agreement,

intending to be legally bound thereby.

Dated: ___9/27/02___                    Dated: _____

SIDLEY AUSTIN BROWN & WOOD LLP          GENOVESE JOBLOVE & BATTISTA
Attorneys for Defendant Credit Suisse    Attorneys for Class Plaintiffs
First Boston Corporation                 Bank of America Tower, 36th Floor
787 Seventh Avenue                       100 Southeast Second Street
New York, New York 10019                 Miami, Florida 33131
Telephone: (212) 839-5400                Telephone: (305) 349-2300
Facsimile: (212) 839-5599                Facsimile: (305) 349-2310

By: _Laura H-Allen___                    By: _____
       LAURA H. ALLEN                           JONATHAN E. PERLMAN
       Admitted Pro Hac Vice                    Florida Bar No. 773328
                                                CHAD K. LANG
                                                Florida Bar No. 0156922

X:\Documents\Work\U to Z\Zamora, Olga\Pleadings\Settlement Agreement.wpd

**[CSFB LETTERHEAD]**

_____, 2002

[Recipient's Name]
[Street Address]
[City, State Zip]

Re:     Settlement of Lawsuit Seeking Overtime Pay

Dear CSFB Employee/Former Employee:

Enclosed for your review are documents concerning a lawsuit by two employees relating to overtime pay which was recently settled by CSFB. These documents are: a Notice of Settlement, a sample Consent Form, a settlement check payable to you, Proof of Claim Forms, and Answers to Frequently Asked Questions.

**How the Settlement Affects You**
As you may know, CSFB and Donaldson, Lufkin & Jenrette merged in November 2000. Following the merger, Donaldson, Lufkin & Jenrette Securities Corporation ("DLJ") became a subsidiary of CSFB, and employees in DLJ's PCS unit became employees of CSFB. Because our records indicate that you worked full-time in the PCS unit of DLJ, or, after the merger, CSFB, as a sales assistant, or as a non-exempt administrative assistant, clerk, cashier, operations assistant, operations analyst, training assistant, wire operator or receptionist during all or a portion of the three years prior to September 27, 2002, you are *automatically* eligible to participate in this settlement. The enclosed check is your payment under the settlement. The enclosed Proof of Claim instructions and forms detail the process and provide you all the necessary materials you will need to complete if you believe you are entitled to compensation in addition to that provided in the enclosed check.

**Your Options**
We encourage you to read the enclosed Notice of Settlement for full details. You will need to evaluate your own individual situation to determine how you wish to proceed. In summary, you have three options:

1.      *Accept* the settlement by *signing* and depositing/cashing *the settlement check* no later than _____, without further submitting any claims.

   • If you are not sure whether or not you are owed overtime, you may accept the check if there is any question that you may have been underpaid for overtime hours worked.

   • You do not need to retain your own attorney or appear in court.

**EXHIBIT 1**

2.  *Accept* the settlement by *signing* and depositing/cashing *the settlement check* no later than _____, and, if you believe you are owed additional overtime compensation, *mail Proof of Claim* forms (attached) and supporting documentation no later than _____.

- If this is the case, you may support your Proof of Claim by submitting contemporaneous notes and/or diary entries that you made that accurately reflect the overtime hours you worked and for which you were not paid and/or by listing any other evidence which you believe may corroborate your claim. Please note that your Proof of Claim form must be signed under penalty of perjury.

- If your claim is approved, you will receive a supplemental check in the approved amount within six months of the _____ filing due date.

3.  *Decline* to participate, and *return or destroy* the settlement check.

**Effect of Participation on Your Employment as a Current Employee**
Your participation in this settlement will have NO IMPACT WHATSOEVER on your employment with CSFB. Both CSFB policy and federal law prohibit *any* type of discrimination or retaliation if you choose to participate in this action or decide not to participate.

**Addressing Your Questions**
In an effort to address most of the questions you may have when considering this settlement, we have enclosed a section entitled "Answers to Frequently Asked Questions." Additionally, a hotline has been established with the Plaintiffs' Counsel to address your additional questions and concerns. You may call Jonathan E. Perlman, Esq. at the law firm of Genovese Joblove & Battista, Plaintiffs' Counsel, at 800-625-7479, Monday through Friday, 9:00 a.m. to 5:00 p.m., Eastern Time.

Sincerely,

Enclosures:
Notice of Settlement
Settlement Check (Endorsement and Consent Form on the back)
Questions & Answers Sheet
Proof of Claim Forms

X:\Documents\WORK\Zamora, Olga\Forms\CSFB Letterhead - Ltr re Setttlemt of Lawsuit.wpd

2

## NOTICE OF SETTLEMENT

**TO:** **Persons who were employed full-time as sales assistants, or as non-exempt administrative assistants, clerks, cashiers, operations assistants, operations analysts, trading assistants, wire operators or receptionists in the PCS unit of DLJ or CSFB in the three years prior to September 27, 2002.**

**RE:** **Settlement of a lawsuit brought against Credit Suisse First Boston Corporation for overtime compensation**

The purpose of this Notice is to inform you of the settlement of a lawsuit that has been filed against Credit Suisse First Boston Corporation ("CSFB") and to advise you of legal rights you may have in connection with that lawsuit and in connection with the settlement.

### DESCRIPTION OF THE LAWSUIT

As you may know, CSFB and Donaldson, Lufkin & Jenrette merged in November 2000. Following the merger, Donaldson, Lufkin & Jenrette Securities ("DLJ") became a subsidiary of CSFB, and employees in DLJ's Private Client Services ("PCS") unit became employed by CSFB.

A lawsuit was filed on August 27, 2001 in the United States District Court for the Southern District of Florida (the "Court") by Olga Zamora and Susanna Rader, two former employees in DLJ's PCS unit. Zamora and Rader alleged that CSFB had failed to pay them for overtime work in violation of Section 7 of the Fair Labor Standards Act, 29 U.S.C. § 207. Certain other individuals filed consent forms in the action prior to settlement (together with Zamora and Rader, the "Pre-Notice Plaintiffs"). In the lawsuit plaintiffs sought to recover overtime pay that they claimed they had earned prior to filing the lawsuit. CSFB denied plaintiff's charges and denied that it has violated Section 7 of the Fair Labor Standards Act.

Zamora and Rader filed the lawsuit as a collective action under Section 16(b) of the Fair Labor Standards Act, 29 U.S.C. § 216(b), on behalf of themselves and other similarly situated persons. Specifically, they sought to sue on behalf of persons who were or had been employed full-time in the PCS unit of DLJ or CSFB as sales assistants, or as non-exempt administrative assistants, clerks, cashiers, operations assistants, operations analysts, trading assistants, wire operators and receptionists who had allegedly worked overtime without being paid appropriately for that overtime during the three years prior to their consenting to join the lawsuit.

### DESCRIPTION OF THE SETTLEMENT

After taking into account the costs, delays, and uncertainties of litigation, the plaintiffs in the lawsuit and CSFB have agreed that it is in their mutual best interests to resolve the issues raised by the complaint without protracted litigation. Although CSFB denies that it has violated the Fair Labor Standards Act, the Company wants to identify any current or former employees in

the positions described above who may not have been paid correctly for overtime so that they may be compensated appropriately.

Accordingly, CSFB and the Plaintiffs proposed to the Court a settlement of the lawsuit that allows any current or former domestic employee of DLJ or CSFB to join the lawsuit and participate in the settlement if he or she was actively employed full-time in the domestic PCS unit of DLJ or CSFB as a sales assistant or as a non-exempt administrative assistant, clerk, cashier, operations assistant, operations analyst, trading assistant, wire operator or receptionist during the three years prior to September 27, 2002.

## EFFECTS OF JOINING OR NOT JOINING THIS LAWSUIT

If you endorse the enclosed Settlement Check, you are agreeing to join the lawsuit as a party plaintiff and to participate in the settlement. That means that you are both asserting a claim for unpaid overtime compensation and agreeing to settle your claim, and that you are agreeing to be bound by the terms of the settlement and by the judgment entered by the Court in the lawsuit. It also means, of course, that you may not assert the same claim in any other lawsuit, arbitration, or administrative proceeding.

The Plaintiffs who have already joined the lawsuit are represented by the law firm of Genovese Joblove & Battista, Bank of America Tower, 100 S.E. Second Street, 36th Floor, Miami, Florida 33131. When you endorse the Settlement Check, you are also agreeing to be represented in this lawsuit by these attorneys. Their fees will be paid by CSFB out of the total settlement amount. You will not have to pay any attorneys' fees or court costs out of your Settlement Check.

If you choose <u>not</u> to join this lawsuit, you may not participate in the settlement and you may not deposit or cash the Settlement Check. (If you <u>do</u> deposit or cash the Settlement Check, you are opting into this lawsuit by doing so.)

## HOW TO SUBMIT A PROOF OF CLAIM

If you believe that you have a valid claim for overtime compensation for the relevant time period that is more than the amount of the Settlement Check, you may submit a Proof of Claim. You must document your claim by completing and submitting the enclosed Proof of Claim Affirmation and the related forms in a timely manner. You may not submit a Proof of Claim unless you have first joined the lawsuit by endorsing the Settlement Check and depositing it on or before **[date 45 days after mailing of Notice]**, 2002.

The Proof of Claim Affirmation and the related forms are important legal documents. You should read the instructions carefully and complete each of the Proof of Claim Forms fully and accurately. You must sign the Proof of Claim Affirmation and attest to its truthfulness and accuracy, under penalty of perjury. You are requested to attach copies (<u>not</u> originals) of any documentation that you believe supports your claim.

If you decide to submit a Proof of Claim, you must send your Proof of Claim Affirmation, the related Proof of Claim Forms, and your supporting documentation to the Settlement Administrator, **[name and address]**, postmarked no later than **[insert date 60 days after date of mailing of notice]**, 2002.

## ADMINISTRATION OF PROOFS OF CLAIM

Your Proof of Claim for supplemental payment will be reviewed and evaluated by the Settlement Administrator, CSFB, and Plaintiffs' Counsel within 2 months of the deadline for submission. You may be requested to supply additional information or documentation. The Branch Manager and other personnel in the CSFB or DLJ Office where you work or worked others with relevant information, may also be asked to supply information relating to your claim. If the information or documentation you supply is determined to be insufficient or inaccurate, your claim for supplemental payment, that is for amounts beyond the amount of your Settlement Check, may be reduced or disallowed in its entirety.

If your claim for supplemental payment is disallowed or reduced, and you disagree with that decision, you may object and request a hearing before the Federal Court in Miami, Florida. You must object before you cash or deposit any supplemental payment check you may have received. If the Court grants your request for a hearing, you will have an opportunity to appear in person before the Court in Miami, at your own expense, to present your claim for a ruling by the Court. If the Court does not decide in your favor after the hearing, you may be required to pay court costs.

The maximum settlement amount, which has been agreed to by the parties and approved by the Court is $1,700,000.00. In addition, CSFB will pay the Costs of Administration of the settlement up to a maximum of $50,000.00; any excess Costs of Administration are to be paid out of the settlement amount. Both CSFB and Plaintiffs' Counsel believe that the maximum settlement amount will be sufficient to pay all bona fide claims and that the allowance for Costs of Administration will be sufficient to cover all such costs. However, if the aggregate total of Settlement Checks, Approved Proofs of Claim, payroll taxes that CSFB is required by law to pay, Plaintiffs' Counsel's attorneys' fees, and excess Costs of Administration exceed $1,700,000, then all Approved Proofs of Claim will be prorated. If that occurs, each Plaintiff whose Proof of Claim was approved will receive less than the full amount of his or her Approved Proof of Claim. If it is necessary to prorate the Approved Proofs of Claim, all Approved Proofs of Claim, except for the Pre-Notice Plaintiffs, who have already submitted proofs of claim and received payment, will be reduced proportionally. If you receive a Supplemental Settlement Award, federal, state and local taxes will be withheld, as required by law.

## WHERE TO GET MORE INFORMATION

**The Plaintiffs' Counsel has a hotline to answer any questions you may have about the lawsuit, the settlement, your eligibility to participate, or what you need to do to opt in or submit a Proof of Claim. You may call Jonathan E. Perlman, Esq. at the law firm of Genovese Joblove & Battista, Plaintiff's Counsel at (800) 625-7479 Monday through Friday between the hours of 9 a.m. and 5 p.m. Eastern time.**

**NO OPINION ON THE MERITS IS EXPRESSED BY THE COURT**

The content and distribution of this Notice of Settlement have been authorized by the Honorable K. Michael Moore, United States District Judge, for the sole purpose of determining the identity of persons who wish to be involved in this lawsuit and participate in the settlement. The Court has approved the settlement as a fair and reasonable resolution of the dispute among the parties, but the Court has taken no position and expressed no opinion either on the merits of the present plaintiffs' claims, CSFB's defenses to those claims, or on the question of whether any current or former employee should or should not join this lawsuit.  The detailed terms and provisions of the settlement, including definitions of words and phrases used in this Notice of Settlement, are set forth in the Settlement Agreement which is on file with the Court.  In the event of conflicting interpretations, the provisions of the Settlement Agreement will control.

THE FAIR LABOR STANDARDS ACT PROHIBITS ANYONE FROM DISCRIMINATING OR RETALIATING AGAINST YOU IF YOU CHOOSE TO JOIN THE LAWSUIT AND PARTICIPATE IN THIS SETTLEMENT.

X:\Documents\WORK\Zamora, Olga\Forms\Notice of Settlement.wpd

NY1 5133840v5

## QUESTIONS AND ANSWERS

1. Why did CSFB voluntarily agree to settle this lawsuit instead of contesting the plaintiffs' claims at trial?

   *CSFB does not believe that the claims asserted in this lawsuit have merit or that the plaintiffs would prevail at trial. However, because litigation would almost certainly involve expensive and protracted pretrial proceedings in many states and because current and former employees would have to become involved in the dispute, potentially disrupting both productivity and morale, a decision was made to resolve the lawsuit within reasonable cost parameters by providing a settlement amount that is fair to persons employed as sales assistants or as non-exempt administrative assistants, clerks, cashiers, operations assistants, operations analysts, trading assistants, wire operators, and receptionists at CSFB who play an essential role in serving the customers of its PCS unit.*

2. Who sent out the Notice of Settlement?

   *The Notice of Settlement was prepared jointly by CSFB and Counsel for the Plaintiffs, and approved by the Court. It was mailed by CSFB. The names and home addresses of CSFB's current and former employees have not been disclosed to anyone outside the Company other than counsel and the Settlement Administrator.*

3. Who received the Notice of Settlement?

   *The Notice of Settlement was sent to those current and former employees of CSFB who may be eligible to join the lawsuit and participate in the settlement. The list includes those persons who were employed full-time in the PCS unit of DLJ or CSFB as sales assistants, or as non-exempt administrative assistants, clerks, cashiers, operations assistants, operations analysts, trading assistants, wire operators, and receptionists for all or part of the time between  September 27, 1999 and September 27, 2002.*

4. What does CSFB have to do with DLJ?

   *In November 2000, CSFB merged with DLJ.  Both Companies together are now known as CSFB.  As a  result of the merger,  employees in DLJ's PCS unit became employees of CSFB, although they continued to be paid through a separate DLJ U.S. payroll through December 31, 2001.  Only people who were employed as sales assistants, or as non-exempt administrative assistants, clerks, cashiers, operations assistants, operations analysts, trading assistants, wire operators, and receptionists in the PCS unit are eligible to participate in this Settlement.*

5. Did every person who received a Notice of Settlement get a Settlement Check?

*Yes. However, the amounts of the Settlement Checks vary in proportion to the length of time the payees were employed as sales assistants, or as non-exempt administrative assistants, clerks, cashiers, operations assistants, operations analysts, trading assistants, wire operators, and receptionists during the last three years.*

6. Can I deposit the Settlement Check without endorsing it or agreeing to the terms of the settlement?

   *No. The Settlement Check contains instructions to the bank not to pay the check if the check is not endorsed or if the paragraph above the endorsement has been altered in any way.*

7. Can I cash the Settlement Check instead of depositing it?

   *You should deposit the Settlement Check with your bank. That way you can be assured that your consent to join the lawsuit will be filed with the Court in a timely fashion.*

8. Can I deposit the Settlement Check even if I don't think CSFB owes me any overtime compensation?

   *Yes. Once you deposit/cash the Settlement Check, no one will review the hours you worked and no one will retaliate against you for joining the suit.*

9. Do I have to pay taxes on the Settlement Check?

   *Yes. The Settlement Check is a settlement payment that settles a claim for overtime pay, so it is taxable income. Applicable federal, state, and local taxes have been withheld from the Settlement Check, as indicated on the check stub, and the gross amount of the Settlement Check will be reported on a W-2 Form at the end of the year, whether or not you are still employed by CSFB. The same will apply to any Supplemental Settlement Check you may receive.*

10. Do I need to return the Settlement Check if I do not want to participate in the settlement?

    *If you wish, you may return the Settlement Check to [administrator] but you are not required to do so. You may destroy the check instead.*

11. What should I do if I think the Settlement Check is not sufficient to settle my valid, documentable claim for overtime pay?

    *If you believe that CSFB owes you more overtime pay than the amount of the Settlement Check, you need to (a) endorse and deposit/cash the Settlement Check,*

2

*and* (b) complete the Proof of Claim Forms to document your claim for any additional amount(s) you believe you are owed.

12. If I submit a Proof of Claim, how long will it take before that part of my claim is paid?

*All Proofs of Claim will be revised and evaluated before any Supplemental Payment Checks are issued. CSFB and Plaintiffs' Counsel anticipate that all Proofs of Claim will be reviewed, evaluated and, if approved, paid in full or in part within two months of the due date for the submission of Proofs of Claim.*

13. What documents or information do I need to provide if I submit a Proof of Claim for Supplemental Payment?

*Because individual situations will vary, there is no single answer to this question. In addition to your signed Proof of Claim Affirmation and the related forms, you should submit whatever documents you have that will demonstrate for the time period you worked full-time in the PCS unit of DLJ and/or CSFB as a sales assistant, or as a non-exempt administrative assistant, clerk, cashier, operations assistant, trading assistant, wire operator, or receptionist ( 1) the weeks in which you actually worked more than 40 hours excluding lunch breaks and other breaks during which you did not work, (2) how many hours you worked beyond 40, and (3) that you were not paid for the overtime. You may also list any other evidence which you believe supports your claim. For example, if you kept contemporaneous notes of the hours you worked in a datebook or a pocket diary, you should attach copies (not originals) of the appropriate pages.*

14. Can I submit a Proof of Claim even if I do not have any supporting documents?

*Yes, as long as you prepare the Proof of Claim Forms completely and accurately. Whether you have supporting documents or not, you must sign the Proof of Claim Affirmation and attest under penalty of perjury that the information in the Affirmation is true and accurate. There is no requirement that you attach any other supporting documents. You should be aware, however, that such documents will enhance the likelihood of approval of the full amount of your claim for Supplemental Payment.*

15. Who will evaluate my Proof of Claim for Supplemental Payment?

*Your Proof of Claim for Supplemental Payment will be evaluated by the Settlement Administrator, by Plaintiffs' Counsel, and by CSFB. If needed, you will be given an opportunity to supply additional information or documentation, and the Manager and other personnel in the Domestic Retail Branch Office where you work or worked or other persons may also be contacted for information relating to your Proof of Claim .*

16. What can I do if I disagree with the evaluation of my Proof of Claim for Supplemental Payment?

> *Your may* <u>not</u> *cash/deposit your Supplemental Claim Check until any disagreement is resolved. If your Proof of Claim is rejected or reduced because your information or documentation is determined to be insufficient or inaccurate, and you disagree with that decision, you may request a hearing before the Federal Court in Miami, Florida. If the Court grants your request, you will have an opportunity to appear in person, at your own expense, and present your claim for a decision by the Court. If the Court does not decide in your favor after a hearing, you may be required to pay court costs .*

17. Will CSFB retaliate against me if I decide to join this lawsuit?

> *No.  CSFB policy and Federal law both prohibit anyone from discriminating or retaliating against you because you choose to join this lawsuit and participate in the settlement. The Company and the Court intend to enforce that prohibition vigorously.*

18. Who can I talk to if I have questions about joining the lawsuit and participating in the settlement?

> *Plaintiffs' counsel has set up a hotline to answer any questions you may have about the lawsuit, the settlement, your eligibility to participate, or what you need to do to opt in or submit a Supplemental Proof of Claim. You may call Jonathan E. Perlman, Esq. at Genovese Joblove & Battista, the Plaintiffs' Counsel, at (800) 625-7479 Monday through Friday between the hours of 9 a.m. and 5 p.m. Eastern Time.*

4

**CHECK LEGEND**

I have read and understand the Consent Form that accompanied this Settlement Check. I hereby appoint Genovese Joblove & Battista, 100 S.E. Second Street, 36th Floor, Miami, Florida 33131, as my attorney-in-fact with full authority to sign a copy of that Consent Form on my behalf and to file with the Court my consent to join as a party plaintiff the lawsuit captioned <u>Olga Zamora, Susanna Rader, on behalf of themselves and other similarly situated persons v. Credit Suisse First Boston Corporation</u>, No. 01-3645-CIV-MOORE, pending in the U.S. District Court, Southern District of Florida, and for no other purpose.

Date:_____          Signed_____

X:\Documents\WORK\Zamora, Olga\Forms\Check Legend.wpd

**EXHIBIT 1.A**

## CONSENT FORM

I hereby consent to join as a party plaintiff the lawsuit captioned <u>Olga Zamora, Susanna Rader, on behalf of themselves and other similarly situated persons v. Credit Suisse First Boston Corporation</u>, No. 01-3645-CIV-MOORE, pending in the United States District Court for the Southern District of Florida (the "Court"), and to be bound by the terms of the settlement and by any judgment of the Court in that case. I have read and understand the Notice of Settlement that accompanied this Settlement Check.

I affirm that I was actively employed by Credit Suisse First Boston Corporation or Donaldson Lufkin & Jenrette Securities Corp. ("DLJ") (together, "CSFB") and worked full-time in the Private Client Services ("PCS") unit as a sales assistant, or as a non-exempt administrative assistant, clerk, cashier, operations assistant, operations analyst, trading assistant, wire operator, or receptionist during all or part of the three years preceding September 27, 2002.  I believe that during that period of employment I actually worked more than 40 hours in a given week (excluding lunch breaks or other breaks during which no work was performed and I was not required to remain at my desk) and that I was not paid, or was paid at a rate less than one and one-half times my regular rate of pay, for the hours I worked in excess of 40 hours in that week.

I understand that by signing and depositing the Settlement Check I have asserted a claim in this lawsuit for unpaid overtime compensation and that I have settled my claim. I also understand that if I choose to submit a Proof of Claim for Supplemental Payment in the lawsuit, I must do so on or before **[date 60 days from mailing Notice].**

I further understand that by signing and depositing the Settlement Check, I have consented to be represented in this lawsuit by Plaintiffs' Counsel, Jonathan E. Perlman, Esq., Genovese Joblove & Battista, P.A., Bank of America Tower, 36th Floor, 100 S.E. Second Street, Miami, Florida 33131.

I further understand that Plaintiffs' Counsel, on my behalf, will file with the Court a form indicating my consent to join this action and to be represented by Mr. Perlman and the Genovese Joblove & Battista firm.

X:\Documents\WORK\Zamora, Olga\Forms\Consent Form.wpd

**EXHIBIT 1.B**

## PROOF OF CLAIM INSTRUCTIONS

The forms in this package may be used to submit a Proof of Claim if you believe that you have a claim for overtime compensation in excess of the amount you received in the Settlement Check.

The instructions below describe the step-by-step procedure for preparing a Proof of Claim for Supplemental Payment. Be sure to follow all of the instructions carefully. You must complete and sign an Affirmation in support of your Proof of Claim; the Affirmation must be signed under penalty of perjury. You must complete and attach to the Affirmation a Salary History Form, a separate Time Record Form for each week in which you actually worked more than 40 hours and were not paid appropriately for the overtime, a Computation Form, and copies of any documents you have that you believe support your Proof of Claim for Supplemental Payment. When you have finished, you must submit your Proof of Claim for Supplemental Payment to the Settlement Administrator, post-marked no later than **[insert date 60 days from mailing of Notice]**, 2002.

**Instructions**

i.        Make sure you have all the forms you will need to prepare your Proof of Claim for Supplemental Payment. You should have a Proof of Claim Affirmation Form, a Salary History Form, Time Record Forms, a Computation Form, and any supporting documentation. <u>You should photocopy the Time Record Form before you begin if you will need multiple copies.</u>

ii.       Complete the Salary History Form, following the instructions at the top of that form. Print your name and Social Security number at the top of each page you use. Do not write anything in the spaces labeled "Claim #."

iii.     Complete a Time Record Form for each week for which you claim you are owed overtime pay. <u>Photocopy the Time Record Form before you begin if you will need multiple copies.</u> You should not complete a Time Record Form for any week in which you did not actually work more than 40 hours, or for any week in which you worked more than 40 hours but were paid correctly for the overtime you actually worked. (Remember that lunch breaks and other breaks during which you did no work and were not required to sit at your desk do not count as time actually worked; nor do absences, including holidays, vacation days, and sick days, whether paid or not.) Print your name and Social Security number at the top of each page you use. Do not write anything in the spaces for "Claim #."

iv.      Complete the Computation Form, following the instructions at the top of that form. Print your name and Social Security number at the top of each page you use. Do not write anything in the spaces labeled "Claim #."

**EXHIBIT 1.C**

       v .     Complete the Proof of Claim Affirmation, as follows:

(i)     Print your name as "Claimant" in the blank above paragraph 1.

(ii)    In paragraph 1, circle either "current" or "former" employee.

(iii)   Fill in the information requested in paragraphs 2 through 5 of the Affirmation, and circle "am" or "was" in paragraph 4 on page 2.

(iv)   If you are a former employee of DLJ or CSFB, fill in your last day of employment in paragraph 6 on page 2. If you are still employed by CSFB as a full-time non-exempt employee, print "n.a." for "not applicable."

(v)    In paragraph 9 on page 3 fill in the amount of the Settlement Check you received. (This amount should <u>not</u> be included in your Proof of Claim.)

(vi)   In paragraph 13 on page 4, fill in the total number of overtime hours for which you claim overtime compensation (from Line F of the Computation Form) and the total amount of your Proof of Claim (from Line I of the Computation Form).

(vii)  In paragraph 14 on page 4, list each document that you are attaching to the Affirmation to support your Proof of Claim. Add additional pages if necessary.

(viii) Print your name and Social Security number at the top of each page of the Affirmation. Do not write anything in the spaces labeled "Claim #."

      vi.    Assemble your Proof of Claim Forms, as follows:

(i)     Attach to the Affirmation your completed Salary History Form, Time Record Forms, and Computation Form.

(ii)    Attach to the Affirmation a copy (<u>not the original</u>) of each supporting document that you listed in Paragraph 14.

(iii)   Print your name and Social Security number at the top of each page of each document you attach.

(iv)   Read the completed Affirmation carefully and make sure all the attached forms are prepared correctly.

(v)    Sign the completed Affirmation. Your Proof of Claim will not be accepted unless your Affirmation is signed under penalty of perjury.

(vi)   Make a copy for your own records of the Affirmation, the attached forms, and the supporting documents that you are submitting. Be sure to keep the originals of

2

your supporting documents in a secure place in case you are asked to provide them for inspection at some later time.

(vii)   Send your Proof of Claim Affirmation and the attached forms and supporting documents to:

[Settlement Administrator's name and address]

Your Proof of Claim must be postmarked on or before **[insert date 60 days after mailing of Notice]**, 2002.  If it is not, it will not be accepted and under the terms of the settlement, you will be deemed to have waived your claim for any amount greater than the amount of the Settlement Check you received.

**If You Need Help**

If you have any questions about how to prepare and submit your Proof of Claim, you may call Jonathan E. Perlman, Esq. at the law firm of Genovese Joblove & Battista, P.A., the Plaintiffs' Counsel, at (800) 625-7479 Monday through Friday between 9:00 a.m. and 5:00 p.m. Eastern Time.

X:\Documents\WORK\Zamora, Olga\Forms\Proof of Claim Instructions.doc

# TIME RECORD FORM

**Instructions**: Use this form to record the hours you actually worked during the week specified. Please complete a Time Record Form for each week in which you worked overtime. Please photocopy the form before you begin if you need multiple copies.

Include only weeks for which you were employed full-time as a sales assistant, or a non-exempt administrative assistant, clerk, cashier, operations assistant, operations analyst, trading assistant, wire operator, or receptionist in the PCS unit during the period from September 27, 1999 to September 27, 2002. Do not include any week for which you were paid correctly for the overtime you worked. Record all the hours you actually worked each day during the week, indicate the amount of time you took for lunch each day, and use the appropriate "Out of Office Codes" to indicate in the "Time Out of Office" column the amount of time you were out of the office during working hours.

Then compute your Daily Hours Worked (which includes overtime) and add them together to calculate your Total Hours worked for the week. Then subtract 40 hours from this total to arrive at your Total Overtime Hours for the week.

For the Week Beginning Monday, _____ and ending Sunday, _____

| Day | At Office | | | Time Worked Out of the Office | Time Out of Office* | Daily Hours Actually Worked |
|---|---|---|---|---|---|---|
| | Start Time | Finish Time | Less Time for Non-Working Breaks | | | |
| **Monday** | | | | | | |
| **Tuesday** | | | | | | |
| **Wednesday** | | | | | | |
| **Thursday** | | | | | | |
| **Friday** | | | | | | |
| **Saturday** | | | | | | |
| **Sunday** | | | | | | |
| **Total Hours Worked for the Week** | | | | | | |
| **Minus 40 Hours** | | | | | | |
| **Total Overtime Hours Worked for the Week** | | | | | | |

**\* Out of Office Codes**

| | | | | | |
|---|---|---|---|---|---|
| V | = | Vacation | B | = | Bereavement |
| S | = | Sick | M | = | Military |
| P | = | Personal | J | = | Jury Duty |
| FL | = | Family Leave | O | = | Other (describe in the space below). |
| ML | = | Medical Leave | | | |

**EXHIBIT 1.D**

NY1 5132948v5

## COMPUTATION FORM

**Instructions**: Use this form to compute the amount of overtime pay you are due. Please compute separately the amount of overtime you earned in each time period in which you had a different compensation level, and then compute the total. You may call counsel for Class Plaintiffs, Genovese Joblove & Battista, for assistance at (800) 625-7479.

1.  Enter your Total Annual Compensation (from your Compensation History Form) on **Line A**.

2.  Compute your "regular hourly rate." Take your total annual compensation and divide by 52 (the number of weeks in a year), then divide the result by 40 (the number of hours in CSFB's <u>standard</u> workweek). Enter your regular hourly rate on **Line B**.

3.  Compute your overtime hourly rate. Multiple your regular hourly rate (including broker compensation) times 1.5. Enter your overtime hourly rate on **Line C**.

4.  Enter the total number of overtime hours you worked during the time period on **Line D**, using information from your Time Record Forms. Remember that you are not to include lunch breaks or other breaks during which you did no work and were not required to remain at your desk, or any holidays, vacation days, sick days, or personal days on which you did not actually work, and be sure that you do not include any overtime for which you have been already paid.

5.  Compute the overtime pay earned during the time period by multiplying the overtime hourly rate (**Line C**) times the number of overtime hours worked (**Line D**). Enter on **Line E** the amount of overtime pay earned.

When you have computed **Lines A-E** for all time periods, compute the total number of overtime hours in all time periods (add up all **Line D**'s), and enter total overtime hours on **Line F**. Find the total unpaid overtime pay earned in all time periods (add up all **Line E**'s), and enter total overtime pay on **Line G**. Next, subtract the amount of the check you received with this package (place the amount of the check on **Line H**). The result, shown on **Line I**, is the total amount of overtime pay you are due.

**EXHIBIT 1.E**

Time period beginning _____ and ending _____:

    Annual compensation (from Compensation History Form)  (A) _____

    Regular hourly rate (A ÷ 52 ÷ 40)  (B) _____

    Overtime hourly rate (B x 1.5)  (C) _____

    Actual overtime hours worked (from Time Record Forms)  (D) _____

    Overtime pay earned (C x D)  (E) _____

Time period beginning _____ and ending _____:

Annual compensation (from Compensation History Form)  (A) _____

Regular hourly rate (A ÷ 52 ÷ 40)  (B) _____

Overtime hourly rate (B x 1.5)  (C) _____

Actual overtime hours worked (from Time Record Forms)  (D) _____

Overtime pay earned (C x D)  (E) _____

Time period beginning _____ and ending _____:

    Annual compensation (from Compensation History Form)  (A) _____

    Regular hourly rate (A ÷ 52 ÷ 40)  (B) _____

    Overtime hourly rate (B x 1.5)  (C) _____

    Actual overtime hours worked (from Time Record Forms)  (D) _____

    Overtime pay earned (C x D)  (E) _____

Time period beginning _____ and ending _____:

    Annual compensation (from Compensation History Form)  (A) _____

    Regular hourly rate (A ÷ 52 ÷ 40)  (B) _____

    Overtime hourly rate (B x 1.5)  (C) _____

    Actual overtime hours worked (from Time Record Forms)  (D) _____

    Overtime pay earned (C x D)  (E) _____

Time period beginning _____ and ending _____ :

Annual compensation (from Compensation History Form)   (A) _____

Regular hourly rate (A ÷ 52 ÷ 40)                      (B) _____

Overtime hourly rate (B x 1.5)                         (C) _____

Actual overtime hours worked (from Time Record Forms)  (D) _____

Overtime pay earned (C x D)                            (E) _____

Time period beginning _____ and ending _____:

    Annual compensation (from Compensation History Form)   (A) _____

    Regular hourly rate (A ÷ 52 ÷ 40)   (B) _____

    Overtime hourly rate (B x 1.5)   (C) _____.

    Actual overtime hours worked (from Time Record Forms)   (D) _____

    Overtime pay earned (C x D)   (E) _____

Time period beginning _____ and ending _____ :

    Annual compensation (from Compensation History Form)  (A) _____

    Regular hourly rate (A ÷ 52 ÷ 40)   (B) _____

    Overtime hourly rate (B x 1.5)   (C) _____

    Actual overtime hours worked (from Time Record Forms)  (D) _____

    Overtime pay earned (C x D)   (E) _____

    Total Overtime Hours (All Lines D)   (F) _____

    Total Overtime Pay Due (All Lines E)   (G) _____

    Less:  Amount of the Settlement Check
    you previously received and deposited   (H) _____

TOTAL PROOF OF CLAIM FOR SUPPLEMENTAL PAYMENT (I) _____

Name: _____.

Social Security #: _____.

## COMPENSATION HISTORY FORM

**Instructions**: Use this form to record your salary history.  Include <u>only</u> the periods when you were employed in the Private Client Services ("PCS") division of Donaldson Lufkin & Jenrette Securities Corp. ("DLJ") or Credit Suisse First Boston Corporation ("CSFB") (collectively "CSFB") as a sales assistant, or as a non-exempt administrative assistant, clerk, cashier, operations assistant, operations analyst, trading assistant, wire operator, or receptionist.  You may call counsel for Class Plaintiffs, Jonathan E. Perlman, Esq., Genovese Joblove & Battista, for assistance at (800) 625-7479.

**Line A**: Print the date you began working at CSFB or September 27, 1999, whichever is later.

**Line 1-7**: Enter each change in your annual compensation for the period for which you are claiming overtime pay.  Annual compensation means your total annual compensation before any deductions for taxes, pension or other items. In the "Description" column, print the reason for your salary change, <u>e.g.</u>, "increase," "promotion," "decrease," or whatever other description is appropriate.  If you need  more space, continue on the back of this form.

**Line B**: If you still work full-time for CSFB as a sales assistant, or as a non-exempt administrative assistant, clerk, cashier, operations assistant, operations analyst, trading assistant, wire operator, or receptionist, print "N/A" or "not applicable."  If not, enter the date on which your employment as a full-time sales assistant, or as a non-exempt clerk, cashier, operations assistant, operations analyst, wire operator, or receptionist at DLJ or CSFB ended and your job title and annual compensation on that date.

X:\Documents\WORK\Zamora, Olga\Forms\Compensation History Form.wpd

**EXHIBIT 1.F**

Name: _____
Social Security #: _____

## PCS¹ COMPENSATION HISTORY FORM September 27, 1999 to September 27, 2002

| Description | Effective Date | Job Title | PCS Annual Compensation |
|---|---|---|---|
| **A.** Employment in PCS Began | | | |
| 1. | | | |
| 2. | | | |
| 3. | | | |
| 4. | | | |
| 5. | | | |
| 6. | | | |
| 7. | | | |
| **B.** Employment in PCS Ended | | | |

(Continue on the back of this form if you need more space.)

¹ PCS is the Private Client Services unit of former Donaldson, Lufkin & Jenrette, which became the PCS unit of CSFB as a result of a merger in November 2000.

Name:_____
Social Security #:_____
Claim # (*leave blank*):_____

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

OLGA ZAMORA, SUSANNA RADER on
behalf of themselves and other similarly
situated persons,

        Plaintiffs,

vs.

CREDIT SUISSE FIRST BOSTON
CORPORATION,

        Defendant.

_____/

CASE NO.: 01-3645-CIV-MOORE
Magistrate Judge O'Sullivan

## **PROOF OF CLAIM FOR SUPPLEMENTAL PAYMENT AFFIRMATION**

_____(Claimant), under penalty of perjury, declares and

says:

    1.    I am a current/former employee of Credit Suisse First Boston Corp. or Donaldson,

Lufkin & Jenrette Securities Corp. ("DLJ") (together, "CSFB"), the defendant in this action.

    2.    My home address, including street address, city, state, and zip code, is

_____. My home telephone number

is _____. My work telephone number is _____.

    3.    My Social Security number is _____.

    4.    I am/was employed by DLJ or CSFB in the PCS unit in the (location)

_____Office. From _____ to _____, I was employed

full-time as a sales assistant, or as a non-exempt administrative assistant, clerk, cashier,

operations assistant, operations analyst, trading assistant, wire operator, or receptionist.

    5.    I began working for DLJ or CSFB on _____.

**EXHIBIT 1.G**

Name:_____
Social Security #:_____
Claim # (*leave blank*):_____

6.      My last day of employment as a full-time non-exempt employee with CSFB was

_____. (*If you are still employed by CSFB as a full-time non-exempt employee, print*

"*n.a.*").

7.      I have read and I understand the Consent Form that was mailed to me. I have

endorsed and deposited the Settlement Check that was mailed to me, and I understand that by

endorsing the Settlement Check I have authorized Plaintiffs' Counsel, Genovese Joblove &

Battista, to sign a Consent Form on my behalf and to file with the Court my consent to join this

lawsuit as a party plaintiff. I understand that Plaintiffs' Counsel will represent me in this lawsuit.

8.      I have read and I understand the Notice of Settlement of Lawsuit which was

mailed to me, and I have had time and opportunity to seek further information or advice

concerning the settlement. I understand that I am bound by the terms of the settlement and by

the judgment of the Court. I understand and agree that in exchange for the settlement payment or

payments that have been, or may be, provided to me, I have fully released and discharged CSFB

from any and all claims relating to wages including overtime compensation that were or could

have been asserted by me in this lawsuit.

9.      I have accepted a Settlement Check for $_____ from CSFB. I believe that I

have a valid, supportable claim for unpaid overtime that is greater than the amount I have

received. I make this affirmation, based upon my personal knowledge, in support of my Proof of

Claim.

10.      While I was employed full-time by DLJ or CSFB as a sales assistant, or as a non-

exempt administrative assistant, clerk, cashier, operations assistant, operations analyst, trading

assistant, wire operator, or receptionist in the PCS unit of DLJ or CSFB, I actually worked more

than 40 hours in one or more week(s) for DLJ or CSFB and I either was not paid for the hours

actually worked in excess of 40 hours or was paid at a rate less than one and one-half times my

regular rate of pay for the hours actually worked in excess of 40 hours. I have not included as

hours worked any lunch breaks or other breaks when I did no work and was not required to

Name:_____

Social Security #:_____

Claim # (*leave blank*):_____

remain at my desk, and I have not included as hours worked any holidays, vacation days, sick days, or personal days, unless I actually worked on those days.

11.      I have attached a Compensation History Form that shows my compensation history for the period between _____, ____ and _____, ____, when I was employed by CSFB or DLJ as a full-time sales assistant, or as a non-exempt administrative assistant, clerk, cashier, operations assistant, operations analyst, trading assistant, wire operator, or receptionist in the PCS unit of DLJ or CSFB.

12.      I have attached one or more Time Record Forms, which show, for each week in which I actually worked more than 40 hours, the number of overtime hours that I worked without receiving overtime pay at a rate of one and one-half times my regular rate of pay. I have not included in these Time Record Forms any hours for which I have already been paid at a rate of one and one-half times my regular rate of pay.

13.      I have attached a Computation Form that shows the computation of my Proof of Claim. The total number of overtime hours that I worked without being paid at least one and one-half times my regular hourly rate, as shown on Line F of the Computation Form, is _____hours. The total amount of my Proof of Claim for Supplemental Payment, as shown on Line I of the Computation Form, is $_____ .

14.      I have attached copies of the following documents and provide the following information, which I believe support my Proof of Claim:

15.      I agree to furnish such other or additional information or documents as the Settlement Administrator or the Court may reasonably require.

I declare under the penalty of perjury that I am the Claimant identified on page 1 of this Affirmation and that all of the information provided above is true and correct.

Executed on _____, 2002.

Name: _____

X:\Documents\WORK\Zamora. Olga\Forms\Proof of Claim For Supplemental Payment Affidavit.wpd

3

## PLAN OF ADMINISTRATION

| Step | Date / Interval | Description |
|------|-----------------|-------------|
| 1. | _____ | Parties execute Settlement Agreement |
| 2. | _____ | Parties jointly apply to the Court for Order Approving the Settlement and the Notice Package |
| 3. | _____ | Parties select and engage a Settlement Administrator |
| 4. | _____ | Settlement Administrator establishes and staffs record-keeping and reporting systems for (a) tracking claims, (b) disbursement of settlement payments, (c) accounting for disbursements of Settlement Consideration and Costs of Administration, (d) reporting status to CSFB & Plaintiffs' Counsel monthly, and (e) responding to requests - for information as needed |
| 5. | _____ | Court issues Order approving Settlement and Approving Notice of Settlement |
| 6. | _____ | CSFB pays Plaintiffs' Counsel's attorneys' fees |
| 7. | _____ | CSFB mails Notice Package |
| 8. | _____ | CSFB notifies Settlement Administrator of printing and mailing costs to be charged to Costs of Administration |
| 9. | _____ | Opt-In Deadline (45 days after Step 7) |
| 10. | _____ | Bank returns canceled checks to Settlement Administrator |
| 11. | _____ | Settlement Administrator reports to Parties on result of opt-in procedure, including names of all persons who opted in, number of Opt-In Plaintiffs, aggregate dollar amount of Settlement Checks negotiated, balance of Settlement Consideration remaining, and enclosing copies of Endorsement and Consent Forms and aggregate Consent Form(s) |
| 12. | _____ | Plaintiffs' Counsel files aggregate Consent Form(s) with the Clerk of the Court (if feasible, aggregate Consent Forms will be filed on a rolling basis as canceled Settlement Checks are returned by Payor's bank) |

**EXHIBIT 2**

13. _____ Settlement Administrator notifies Opt-In Plaintiffs that Consent Forms have been filed

14. _____ Parties jointly move for Final Stipulated Judgment joining the Opt-In Plaintiffs and dismissing the Action

15. _____ Court enters Final Stipulated Judgment, retains jurisdiction over administration of settlement

16. _____ Proof of Claim Deadline (60 days after Step 7)

17. _____ Settlement Administrator mails letters acknowledging receipt of Proofs of Claim, begins returning untimely Proofs of Claim with rejection letter

18. _____ Settlement Administrator reports to parties on receipt of Proofs of Claim, including names of all persons who submitted Proofs of Claim, amount of each Proof of Claim, aggregate amount of Proofs of Claim submitted

19. _____ Settlement Administrator reviews Proofs of Claim (verifies that forms are filled out, signed, and notarized properly; that employment dates and salary history are accurate; that the claimant has opted in), sends completed claims to CSFB and Plaintiffs' Counsel for evaluation, sends letters requesting additional information as needed (including Consent Form if the Endorsement on the back of the Settlement Check has not been returned), advises CSFB and Plaintiffs' Counsel of improperly completed forms

20. _____ CSFB and Plaintiffs' Counsel begin evaluating Proofs of Claim, confer re: decisions to approve/reduce/disallow claims

21. _____ Deadline for Plaintiffs to provide additional information requested by Settlement Administrator in support of Proofs of Claim

22. _____ Settlement Administrator sends remaining Proofs of Claim, including any additional information, to CSFB and Plaintiffs' Counsel for evaluation

23. _____ CSFB and Plaintiffs' Counsel finish evaluating Proofs of Claim, confer with Settlement Administrator re: decisions

to approve/reduce/disallow claims, communicate joint decisions to Settlement Administrator

24. _____ Settlement Administrator reports to parties on results of Proof of Claim evaluation, including name, claim number, and approved amount for each claim and, if the claim was reduced or disallowed, a description of the deficiency; and reporting the total number and aggregate dollar amount of Approved Proofs of Claim

25. _____ Parties confer with Settlement Administrator re: amount to reserve for disputed claims (considering number and size of claims reduced or disallowed and whether Approved Proofs of Claims will have to be prorated)

26. _____ Parties confer with Settlement Administrator re: amount to reserve for Costs of Administration in excess of $ _____ (considering expenditures to date and expected costs of administering disputed claims)

27. _____ Settlement Administrator computes "Maximum Distributable Consideration" ($_____ ) less Settlement Checks actually negotiated or still negotiable, employer's share of taxes withheld and to be paid, attorneys' fees paid, reserve for disputed claims, and reserve for Excess Costs of Administration

28. _____ Settlement Administrator calculates gross amounts of Supplemental Settlement Awards, prorating Approved Proofs of Claim if necessary , and reports to Parties re: disposition of claims, including name, claim number, and amount for each Approved Proof of Claim and aggregate dollar amount

29. _____ CSFB prepares, Plaintiffs' Counsel approves Notice of Supplemental Settlement Award

30. _____ CSFB deposits reserve for disputed claims, reserve for Excess Costs of Administration, and a sum sufficient to pay Supplemental Settlement Awards and employer's and employees' shares of related taxes

31. _____ CSFB issues net Supplemental Settlement Checks, withholding for taxes

32. _____ Settlement Administrator prepares individualized Notices of Supplemental Settlement Award (if feasible to individualize)

33. _____ Settlement Administrator mails checks, each including (individualized) Notice of Supplemental Settlement Award

34. _____ Settlement Administrator reports to parties re: status of Proof of Claim process, including name, claim number, and amount of each Supplemental Settlement Award; number and aggregate amount of Supplemental Settlement Awards

35. _____ Deadline for Plaintiffs to submit Objections to Supplemental Settlement Awards

36. _____ Settlement Administrator reports to Parties re: number, size, nature of objections

37. _____ Plaintiffs' Counsel requests Court hearing(s) re: objections

38. _____ Hearings conducted in Miami; Court rules on Objections to Supplemental Settlement Awards

39. _____ CSFB issues checks for post objection awards, if any, from reserve for disputed Supplemental Settlement Awards, withholds for taxes, pays employer's share of taxes

40. _____ CSFB and/or Plaintiffs' Counsel prepare cover letters to accompany post-objection supplemental Settlement Awards, if any

41. _____ Settlement Administrator mails post-objection Supplemental Settlement Awards, if any, with cover letters

42. _____ CSFB pays costs of hearings at which Plaintiffs prevailed, if, any, and notifies Settlement Administrator of costs to be charged to Costs of Administration

43. _____ Settlement Administrator reports to Parties re: status of reserves for disputed awards, excess Costs of Administration, and attorneys' fees; and re: Costs of Administration incurred and anticipated

44. _____ Parties confer with Settlement Administrator to estimate total Costs of Administration; amount reserved for excess Costs of Administration is adjusted, if necessary

45. _____ CSFB issues and Settlement Administrator mails checks distributing remainder, if any, of reserve for disputed awards as follows: If Supplemental Settlement Awards were prorated, remainder is first distributed pro rata to Plaintiffs whose Proofs of Claim were prorated, again on a pro rata basis and withholding for taxes; if any amount remains when sufficient funds have been distributed to bring all prorated awards to 100% of the approved amount and employer's share of taxes have been paid, that remainder is returned to CSFB

46. _____ Settlement Administrator issues final report, showing disposition of each Plaintiff's claim, total of Settlement Checks, Supplemental Settlement Checks, and employer's share of taxes on those payments, final accounting of attorneys' fees and Costs of Administration (total Costs of Administration actually paid/due on Settlement Administrator's final invoice)

47. _____ Settlement Administrator certifies to parties, who then certify to Court that all claims are resolved

48. _____ CSFB pays Settlement Administrator's final fees and expenses.

49. _____ Parties provide the Court with a final accounting of the distribution of the settlement amount and the allowance for costs of administration; if necessary , parties jointly move for Amended Final Stipulated Judgment and order of Dismissal (e.g., if necessary to add to the caption the names of any additional Opt-In Plaintiffs)

50. _____ Court enters Amended Final Stipulated Judgment and Order of dismissal

51. _____ CSFB issues W-2 forms to current and former employees after year-end

X:\Documents\WORK\Zamora, Olga\Forms\Draft Plan of Administration.wpd

5

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

OLGA ZAMORA, SUSANNA RADER on
behalf of themselves and other similarly
situated persons,

        Plaintiffs,

vs.

CREDIT SUISSE FIRST BOSTON
CORPORATION,

        Defendant.

_____/

CASE NO.: 01-3645-CIV-MOORE
Magistrate Judge O'Sullivan

**ORDER APPROVING SETTLEMENT OF COLLECTIVE
ACTION AND APPROVING NOTICE OF SETTLEMENT**

WHEREAS, Olga Zamora and Susanna Rader ("Plaintiffs") commenced this civil action (the "Action") against their former employer Credit Suisse First Boston Corporation (together with its subsidiary Donaldson, Lufkin & Jenrette Securities Corp. ("DLJ") and all of their other direct and indirect affiliates, subsidiaries, parents, predecessors and successors, "CSFB") on August 27, 2001; and

WHEREAS, Plaintiffs brought the Action on behalf of themselves and other allegedly similarly situated persons, pursuant to 29 U.S.C. § 216(b); and

WHEREAS, Plaintiffs' Complaint alleged that CSFB failed to pay overtime compensation to them and other similarly situated employees in violation of Section 7 of the Fair Labor Standards Act, 29 U.S.C. § 207 ("FLSA"); and

WHEREAS, additional persons have filed consent forms and joined this action, alleging that they are similarly situated and that CSFB failed to pay overtime compensation in violation of the FLSA; and

WHEREAS, CSFB denies that it owes unpaid overtime compensation to Plaintiffs or to any other member of the purported class of individuals similarly situated to Plaintiffs, denies that it has violated Section 7 of the FLSA or any other law or regulation relating to the payment of overtime or other compensation, denies all charges and claims of wrongdoing, contends that it has acted properly under all the circumstances, and contests any liability whatsoever to Plaintiffs or to any other member of the purported class of similarly situated persons; and

**EXHIBIT 3**

WHEREAS, the Court makes and has made no findings as to the proper classification of any plaintiff under the FLSA or that CSFB has engaged in any wrongdoing or in any wrongful conduct or otherwise acted improperly or in violation of any law, duty or regulation in any respect; and

WHEREAS, material issues of fact and substantial questions of law are actually in dispute between the parties; and

WHEREAS, Counsel for the Plaintiffs and Counsel for CSFB have conducted substantial discovery and have had extensive and protracted discussions concerning a resolution of the issues raised in the Action and have proposed a Settlement of those issues; and

WHEREAS, the Court has determined that the Settlement proposed by the parties is a fair and reasonable resolution of a bona fide dispute; and

WHEREAS, the Parties have consented to the entry of this Order and the Court has given the matter due deliberation.

IT IS HEREBY ORDERED that for purposes of this Order the Court adopts and incorporates the definitions in the Settlement Agreement dated September 27, 2002 (the "Agreement"), a copy of which is attached hereto as Exhibit A; and it is further

ORDERED that the Settlement by, between and among the Plaintiffs and Defendant CSFB, as set forth and embodied in the Agreement attached hereto as Exhibit A, is hereby approved; and it is further

ORDERED that within thirty (30) days after the date of entry of this Order and the time for any appeals thereof has run, as set forth in the Agreement, CSFB shall mail or cause to be mailed to the persons eligible to join the Action as parties plaintiff, as defined in the Agreement, a Notice substantially in the form of the Notice attached to the Agreement; and it is further

ORDERED that as one component of the Notice, CSFB shall distribute Settlement Checks to the Notice Recipients, as described in the Agreement; and it is further

ORDERED that CSFB shall distribute funds to Plaintiffs' Counsel, the law firm of Genovese Joblove & Battista, P.A., for attorneys' fees and costs, as described in the Agreement; and it is further

ORDERED that Counsel for the Plaintiffs shall file consent forms, substantially similar to the Consent Form included as an Exhibit to the Agreement, on behalf of all Notice Recipients who consent to join the Action as Opt-In Plaintiffs, accompanied by proof of service of such notices upon Counsel for CSFB, as soon as reasonably practicable, but in no event later than sixty (60) days after the Opt-In Deadline defined in the Agreement; and it is further

ORDERED that Counsel for the Parties, as soon as reasonably practicable after the Opt-In Deadline but no later than ten business days thereafter, shall jointly apply for entry of a Final

Stipulated Judgment, in substantially the form attached to the Agreement, dismissing the Action in its entirety with prejudice; and it is further

ORDERED that Counsel for the Parties, as soon as reasonably practicable after the resolution of all claims asserted in the Action, shall jointly provide the Court with a final accounting of the distribution of the Settlement Consideration and the allowance for Costs of Administration.

Dated: _____, Miami, Florida

SO ORDERED:

_____
K. Michael Moore
United States District Judge

X:\Documents\WORK\Zamora, Olga\Forms\Order Approving Settlement of Collective Action and Approving Notice of Settlement.wpd

NY1 5133006v5

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

OLGA ZAMORA, SUSANNA RADER on
behalf of themselves and other similarly
situated persons,

CASE NO.: 01-3645-CIV-MOORE
Magistrate Judge O'Sullivan

Plaintiffs,

vs.

CREDIT SUISSE FIRST BOSTON
CORPORATION,

Defendant.

_____/

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This case is a collective action, brought by two former employees of Credit Suisse First Boston Corporation (together with its subsidiary Donaldson, Lufkin & Jenrette Securities Corp. ("DLJ") and all of their other direct and indirect affiliates, subsidiaries, parents, predecessors and successors, "CSFB") on behalf of themselves and other allegedly similarly situated persons (collectively "Plaintiffs"), seeking the payment of overtime compensation pursuant to Section 7 of the Fair Labor Standards Act, 29 U.S.C. § 207. The Court makes the findings and reaches the conclusions recited below, from which it follows that the Settlement proposed by the parties should be approved.

## FINDINGS OF FACT

1.     Defendant Credit Suisse First Boston Corporation ("CSFB," the "Defendant," or the "Company") is a Massachusetts corporation with its principal offices in New York, New York.  Effective November 3, 2000 (the "Merger Date"), CSFB merged its business with that of Donaldson, Lufkin & Jenrette, Inc. and the combined entity now operates under the CSFB name.

**EXHIBIT 4**

2.     CSFB is a diversified investment banking and financial services firm, which provides securities brokerage services to certain domestic retail clients through  its offices in New York City and other locations in the United States.

3.     Prior to its merger with CSFB, DLJ operated a Private Client Services unit ("PCS") which provided financial counseling and securities brokerage services to high net worth individuals.  After the merger, PCS became a unit of CSFB.

4.     For at least the past four years,  CSFB or DLJ continuously maintained PCS offices and conducted PCS business in Dade County in this District.

5.     Plaintiffs Zamora and Rader brought this action on behalf of themselves and other similarly situated persons, pursuant to Section 16(b) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), seeking back pay, liquidated damages and/or prejudgment interest, costs and attorneys, fees.

6.     Plaintiffs Zamora and Rader were employed by CSFB in its Downtown Miami, Florida Office during all or part of 2000-2001.   Zamora and Rader both worked as sales assistants.

7.     Plaintiffs Zamora and Rader alleged in their complaint that the class of similarly situated employees includes "themselves and all other past and present employees of CSFB employed at any time within the last three years as sales assistants, wire operators, cashiers or similarly situated hourly positions," who worked "greater than forty (40) hours in a single week, but were not compensated by CSFB for such work they performed in excess of forty (40) hours at rates not less than one and one-half (1-1/2) times the regular rate." Complaint ¶¶ 1, 37.

8.     CSFB denied in its Answer that any other past or present employees of DLJ or CSFB are similarly situated to Plaintiffs for purposes of participation in this litigation.

9.     In offices throughout the U.S. CSFB employs persons who are covered by the provisions of the FLSA, 29 U.S.C. §§ 201 et seq.. ("non-exempt employees") and who are not exempt from the FLSA's overtime provisions.

10.     CSFB's records indicate that as of June 1, 2002, approximately 340 persons were employed full-time as sales assistants, or as non-exempt administrative assistants, clerks, cashiers, operations assistants, operations analysts, trading assistants, wire operators, and receptionists in the Private Client Services ("PCS") unit of DLJ or CSFB.   A total of approximately 597 persons were employed full-time as sales assistants, or as non-exempt administrative assistants, clerks, cashiers, operations assistants, operations analysts, trading assistants, wire operators, and receptionists in PCS unit of DLJ or CSFB during all or part of the relevant period, some of whom were no longer employed full-time in CSFB's domestic Offices as of September 27, 2002.

11.     CSFB has presented evidence to the Plaintiffs demonstrating the following:

(a)     CSFB's stated policy requires that all non-exempt employees be paid in accordance with the minimum wage and overtime requirements of the FLSA and other laws regarding the payment of wages and hours worked.   CSFB's and DLJ's compensation policies and procedures are set forth in employee handbooks distributed to all newly hired employees, and CSFB's policies were also available to all employees on the Company's Intranet site.

(b)     PCS employees in the positions of sales assistants, or as non-exempt administrative assistants, clerks, cashiers, operations assistants, operations analysts, trading assistants, wire operators, and receptionists perform a broad range of activities essential to serving domestic brokerage clients.   The tasks performed by individuals in these positions fall, generally, into similar broad categories.   However, the range and extent of any individual employee's duties vary considerably with regard to the precise mix of activities the individual performs for the sales desks for whom a given employee provides services. Among the factors that affect the characteristics of an individual employee's responsibilities are the demands, size, and staffing of the particular Branch Office, the needs of particular sales desks, the nature of the client's business, and the skills, experience, and initiative of the particular employee, and whether the employee is registered with a self-regulating organization such as the National Association of Securities Dealers or the New York Stock Exchange.

3

(c)     CSFB policy requires that non-exempt employees in each CSFB location, including each domestic Branch Office, prepare written reports of the hours they work each day and submit these reports to the appropriate manager or supervisor in the local Branch Office.

(d)     CSFB and DLJ processed and paid overtime compensation for overtime hours when properly recorded on time records and submitted in accordance with Company policy.

(e)     The Human Resources Department is responsible for instructing local domestic Branch Office supervisory personnel about compensation policies and procedures. Representatives of the Human Resources Department hold meetings to instruct domestic Branch Office personnel about the Company's policies and procedures, including compensation policies and procedures.

12.     Plaintiffs' Counsel has recognized the difficulty of proving each Plaintiff's individual claim and the risk that some or all of the Plaintiffs may well achieve no recovery if litigation proceeds.

13.     Notwithstanding that CSFB has denied that any other employees are situated similarly to Zamora and Rader for purposes of participation in this litigation, CSFB desires to resolve the claims of any and all PCS employees who were employed full-time as sales assistants, or as non-exempt administrative assistants, clerks, cashiers, operations assistants, operations analysts, trading assistants, wire operators, and receptionists and who claim that they have not been paid correctly for overtime they have actually worked.

14.     Plaintiffs' Counsel has conducted substantial discovery and analysis. Based on the results of this discovery and analysis, Plaintiffs' Counsel and Counsel for CSFB have engaged in extensive and prolonged discussions, in good faith, at arms length, and without collusion, in an effort to resolve the issues raised by Plaintiffs' complaint. As a result of this discovery and analysis, Plaintiffs' Counsel has determined that the class of persons situated similarly to Plaintiffs consists of any person employed full-time as a sales assistant, or as a non-

exempt administrative assistant, clerk, cashier, operations assistant, operations analyst, trading assistant, wire operator, or receptionist in the PCS unit of CSFB or DLJ.

      15.     The parties have proposed a Settlement that provides to any person employed full-time as a sales assistant, or as a non-exempt administrative assistant, clerk, cashier, operations assistant, operations analyst, trading assistant, wire operator, or receptionist in the PCS unit of CSFB or DLJ an opportunity to join the Action and participate in the Settlement.

      16.     Plaintiffs' Counsel and Counsel for CSFB, in consultation with their respective clients, have concluded that the terms and conditions of the Settlement are fair, reasonable, and adequate and in the best interests of the parties.

**CONCLUSIONS OF LAW**

      1.     This action arises under Sections 7 and 16(b) of the Fair Labor Standards Act ("FLSA" or the "Act"), 29 U.S.C. §§ 207, 216(b) (1994).

      2.     This Court has jurisdiction over this action pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

      3.     Venue is proper in this district pursuant to Section 1391 of the Judiciary Code, 28 U.S.C. § 1391. The Action is properly heard in the Miami, Florida Court of the Southern District pursuant to Local Rule 3.1 (C).

      4.     CSFB is subject to the personal jurisdiction of this Court.

      5.     Section 7 of the FLSA requires an employer to pay overtime to employees covered under the Act at a rate not less than one and one-half times the employee's "regular rate" for hours worked in excess of forty (40) hours in any week. 29 U.S.C. § 207 (1994).

      6.     Section 16(b) of the FLSA permits an action to be brought by anyone or more employees "for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b) (1994). An employee who wishes to participate in such a collective lawsuit must "opt-in" by filing a consent to join the lawsuit as a party plaintiff. Id. (Such persons are referred to herein as "Opt-In Plaintiffs.")  In contrast to a class action governed by Fed. R. Civ.

5

P. 23, only those who affirmatively "opt in" are bound by the outcome of a collective lawsuit brought pursuant to 29 U.S.C. § 216(b).

7.     A claim for unpaid overtime compensation under the FLSA must be brought within two years after such claim accrues if the violation is nonwillful, or within three years after such claim accrues if the violation is willful. 29 U.S.C. § 255(a) (1994). The action is considered commenced as to any person who joins the action by filing a consent to become a party plaintiff as of the date on which that particular Opt-In Plaintiff s consent to join is filed with the court. 29 U.S.C. § 256 (1994).

8.     To benefit from the three-year statute of limitations for willful violations, a plaintiff has the burden to show that "the employer either knew or showed reckless disregard for whether its conduct was prohibited by the [FLSA]." McLaughlin v. Richland Shoe Co., 486 U.S. 128,133 (1988). Where an employer has engaged in a serious effort to ensure compliance with overtime requirements, a few isolated instances of noncompliance do not constitute willful violation of the FLSA. Reich v. Department of Conservation and Natural Resources, 28 F.3d 1076, 1084 (11th Cir. 1994); Aly v. Butts County , 841 F. Supp. 1199, 1201 (M.D. Ga. 1994).

9.     The Court makes and has made no finding that CSFB has willfully violated Section 7 of the FLSA. 29 U.S.C. § 207 (1994).

10.     Under Section 7 of the FLSA, an employer is not required to pay overtime compensation to any employee who falls within an exemption to the overtime provision of the Act.  29 U.S.C. § 213 (1994).  The overtime provision does not apply to "any employee employed in a bona fide executive, administrative, or professional capacity. . . ." 29 U.S.C. § 213(a)(1) (1994); Piscione v. Ernst & Young, L.L.P., 171 F.3d 527 (7th Cir. 1999); Reich v. John Alden Life Ins. Co., 126 F.3d. 1, 7 (1st Cir. 1997).

11.     The Court makes and has made no finding regarding Plaintiffs' proper classification for the purposes of the exemption to the overtime provision of Section 7 of the FLSA.  29 U.S.C. § 213 (1994).

12.    If an employer is found to have violated § 207, the employer is liable to the employees in an additional equal amount as liquidated damages. 29 U.S.C. § 2l6(b) (1994). However, § 260 of the FLSA provides that "the court may, in its sound discretion, award no liquidated damages or award any amount," if the employer acted in good faith and with reasonable grounds for believing that its act or omission (if any) was not a violation of the FLSA. 29 U.S.C. § 260 (1994).

13.    Based on CSFB's company-wide policies that are in compliance with the FLSA and CSFB's attempts in good faith to comply with the requirements of § 207, 29 U.S.C. § 207 (1994), the Court has concluded that the Plaintiffs would likely be awarded no liquidated damages if the litigation were to proceed.

14.    Compromises of FLSA back wage or liquidated damage claims are allowed in the adversarial context of a suit brought by employees under the FLSA where a district court enters a stipulated judgment after having determined that a settlement proposed by an employer and employees is a fair and reasonable resolution of a bona fide dispute over FLSA provisions. Lynn's Food Stores. Inc. v. United States, 679 F.2d 1350, 1354-55 (11th Cir. 1982).

15.    This Action is a bona fide dispute and an actual controversy between CSFB and the Plaintiffs. Although some Plaintiffs may have a viable possibility of recovery on their claims, resolution of the numerous disputed issues of fact and law poses a very real risk that some or all of the Plaintiffs would recover less than the amounts they have claimed, or nothing at all.

16.    The Settlement, however, provides for the certainty of at least some recovery by each Plaintiff and further provides for the possibility of a 100% recovery for some or all of the Plaintiffs, thus eliminating entirely the possibility that any Plaintiff will achieve no recovery at all because of a failure of his or her claim on either the facts or the law.

17.    Accordingly, the Court has determined that the terms and conditions of the Settlement are fair, reasonable and adequate and in the best interests of the parties.

Dated: Miami, Florida

_____, 2002

7

SO ORDERED:


_____

K. Michael Moore
United States District Court Judge


X:\Documents\WORK\Zamora, Olga\Forms\Findings of Fact and Conclusions of Law.wpd

8

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

| | |
|---|---|
| OLGA ZAMORA, SUSANNA RADER on behalf of themselves and other similarly situated persons, | CASE NO.: 01-3645-CIV-MOORE<br>Magistrate Judge O'Sullivan |
|        Plaintiffs, | |
| vs. | |
| CREDIT SUISSE FIRST BOSTON CORPORATION, | |
|        Defendant. | |

_____/

## FINAL STIPULATED JUDGMENT
## AND DISMISSAL OF COLLECTIVE ACTION

WHEREAS, Olga Zamora and Susanna Rader ("Plaintiffs") commenced this civil action (the "Action") against their former employer Credit Suisse First Boston Corporation (together with its subsidiary Donaldson, Lufkin & Jenrette Securities Corp. ("DLJ") and all of their other direct and indirect affiliates, subsidiaries, parents, predecessors and successors, "CSFB") on August 27, 2001; and

WHEREAS, Plaintiffs brought the Action on behalf of themselves and other allegedly similarly situated persons, pursuant to 29 U.S.C. § 216(b); and

WHEREAS, Counsel for the Plaintiffs and Counsel for CSFB, after extensive and protracted discussions proposed a Settlement resolving the issues raised by the Action; and

WHEREAS, the Court, by Order dated _____, 2002, approved the Settlement proposed by the parties, having determined that material issues of fact and substantial questions of law were actually in dispute between the parties and that the Settlement proposed jointly by the parties was a fair and reasonable resolution of a bona fide dispute; and

WHEREAS, the Parties have certified to the Court that Notice was sent to the current or last known home addresses of those persons eligible to join the Action as Plaintiffs, pursuant to the Court's Order, and that the deadlines for joining the Action expired on **[date of Opt-In Deadline]**, 2002; and

WHEREAS, the parties have consented to the entry of this Final Stipulated Judgment and the Court has given the matter due deliberation;

**EXHIBIT 5**

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that:

1.     For purposes of this Final Stipulated Judgment, the Court adopts and incorporates the definitions in the Settlement Agreement dated September 27, 2002 (the "Agreement"), a copy of which appears in the record as Exhibit A to the Court's Order dated _____, 2002.

2.     This Court has jurisdiction over the subject matter of this litigation, and all claims asserted in this litigation, and over all parties to this litigation, including all Plaintiffs in this Action.

3.     This Court hereby decrees that neither the Settlement, nor this Final Stipulated Judgment, nor the fact of settlement is an admission or concession by CSFB of any liability, damages or wrongdoing whatsoever. This Final Stipulated Judgment is not a finding of the validity or invalidity of any claims asserted in the Action or of any wrongdoing by CSFB. Neither this Final Stipulated Judgment, nor the Settlement, nor the fact of settlement, nor the settlement proceedings, nor the settlement negotiations, nor any related documents shall be used or construed as an admission of any fault, liability, or wrongdoing by any person or offered or received in evidence as an admission, concession, presumption, or inference against any party in any action in this or any other court or in any arbitration or state or federal agency administrative proceeding.

4.     The names of all persons who filed with the Court forms of consent expressly indicating their consent to join the Action as Opt-In Plaintiffs are set forth in Schedule A attached hereto. Each person identified in Schedule A attached hereto (collectively with the "Plaintiffs," the "Settling Plaintiffs") has joined the Action as a Plaintiff and is bound by the terms of the Settlement and by this Final Stipulated Judgment.

5.     This Court hereby dismisses the Action in its entirety with prejudice and dismisses in its entirety and with prejudice each and every Settled Claim as defined in the Settlement Agreement asserted by the Settling Plaintiffs, or any of them, against CSFB in the Action.

6.     CSFB and all of its present or former officers, directors, principals, employees, agents, attorneys, representatives, affiliates, parents, subsidiaries, insurers, predecessors, successors or assigns are hereby and forever released and discharged by each Settling Plaintiff with respect to any and all claims, rights or causes of action arising out of or relating to any alleged violation of the FLSA, 29 U.S.C. 201 et seq., or any other federal, state or local law, statute or regulation concerning overtime wages or the computation or payment of overtime compensation, whether now known, whether based upon common, statutory, federal, state, local or other law, which have been, could have been, or in the future might be asserted in this Action, in any action in any court of competent jurisdiction, or in any arbitration or federal and/or state agency or administrative proceeding, and which arise out of or hereafter will arise out of, are in connection with, or relate to any of the allegations or claims that have been, could have been, or in the future might be asserted in this Action (the "Settled Claims").

7.     Each Settling Plaintiff is hereby forever barred and enjoined from asserting any Settled Claim against CSFB or any of its present or former officers, directors, principals, employees, agents, attorneys, representatives, affiliates, parents, subsidiaries, insurers, successors or assigns, either directly or indirectly, in this Action, in any action in this or any other court, or in any arbitration or federal and/or state agency or administrative proceeding.

8.     Without in any way affecting the finality of this Final Stipulated Judgment, this Court hereby retains continuing jurisdiction over the Action and over the parties thereto for purposes of adjudicating any disputes arising under, or requiring the interpretation, enforcement, or implementation of any provision of the Settlement or of this Judgment.

Dated: Miami, Florida

_____, 2002

SO ORDERED:

_____
K. Michael Moore
United States District Judge

X:\Documents\WORK\Zamora, Olga\Forms\Final Stipulated Judgement and Dismissal of Collective Action.wpd